THE BOARD OF COUNTY COMMISSIONERS OF CEDAR COUNTY, PLAINTIFFS IN ERROR, V. PETER JENAL ET AL., DEFENDANTS IN ERROR.

1. **County Treasurer**: PAYMENT OF MONEY TO HIS SUCCESSOR. The payment of money in the hands of a county treasurer, at the termination of his office, to his successor, can be effectuated only by the delivery of that which by the law of the land is recognized as money.

2. ————: ————. The mere delivery of certificates of deposit of a banker—no money having been realized from them—even if assented to by the successor, is not a payment; nor will it relieve the outgoing treasurer and his sureties from liability on his official bond, for failing to pay over money found to be due from him to the county on final settlement.

ERROR to the district court for Dixon county, where the cause had been removed on change of venue, and tried before SAVAGE, J.

*Gamble Brothers, W. E. Gantt, W. F. Bryant* and *C. C. McNish,* for plaintiff in error, cited: *State v. Keim,* 8 Neb., 67.   *First National Bank v. Gandy,* 11 Neb., 431.   *Welton v. Adams & Co.,* 4 Cal., 37.   *Dale v. Burleigh,* 1 Dak., 227.   *Hartwell v. Page,* 8 Wis., 53.   *Burmagim v. Tallant,* 29 Cal., 503.   *Poorman v. Mills,* 35 Cal., 118.   *Bank of Orleans v. Merrill,* 2 Hill, 295.   *Miller v. Austin,* 13 How., 218.   *Naglee v. Palmer,* 7 Cal., 543.   *Payne v. Gardner,* 29 N. Y., 169.   *Downs v. Phœnix Bank,* 6 Hill, 299.   *Robinson v. Gardiner,* 18 Grat., 95.   *Downs v. Phœnix Bank,* 6 Hill, 297, 299.   *Perley v. County of Muskegon,* 32 Mich., 144.   *Young v. Hibbs,* 5 Neb., 433.   *Elliott v. Miller,* 8 Mich., 132.   *Ward v. School District,* 10 Neb., 294.   *State v. Sheldon,* 10 Neb., 455.

*B. B. Boyd* and *W. H. Munger,* for defendants in error, cited: *The State v. Prather,* 44 Ind., 287.   *State v. Grammer,* 29 Ind., 530.

LAKE, CH. J.

The action in the court below was brought on behalf of Cedar county, to recover from Peter Jenal, late treasurer of said county, and the other defendants as sureties on his official bond, a sum of money which it was claimed he had failed and refused to pay over to L. M. Howard, his successor, at the expiration of his term of office. Although the record is exceedingly voluminous, including as it does, unnecessarily, all of the testimony taken in the case, the real gist of the controversy is embraced within very narrow limits.

The defendants, by their answer, admitted that at the expiration of Jenal's term, the amount of money demanded was in his hands, belonging to the county; but they alleged, in defense, full payment "in the manner required by law." Payment being the only defense claimed, if this failed the plaintiff was entitled to judgment as prayed.

The matter relied on for payment is stated in the answer thus: "That on the 14th day of January, 1879, the said Peter Jenal, under the express direction of one Louis M. Howard, who at that time was acting as treasurer of Cedar county, Nebraska, and recognized by the plaintiff as the successor in office of the said Peter Jenal, did pay of said funds to one M. M. Parmer," (who was a banker at Yankton, in Dakota territory,) "the sum of three thousand five hundred dollars, and received certificates from said M. M. Parmer, of said payment, which said Peter Jenal duly delivered to said Louis M. Howard; and said Howard received as payment of the said sum, on the amount to be accounted for to the said plaintiff, by reason of the amount found chargeable to the said Peter Jenal on the settlement with said plaintiff, as set forth in said plaintiff's petition; which, with the amounts admitted in said petition to have been paid, fully satisfies the amount found due at said settlement."

From this it appears that the payment relied on, more briefly stated, was by certificate of deposit purchased from Parmer, with the funds in Jenal's hands, by direction of the succeeding treasurer. If in the opinion of the court this, as to the county, were no payment, the defense fails, and the judgment must be reversed. A very large number of errors are assigned, but all or nearly all of them depend upon whether this plea of payment is any defense or not. If it be a defense, then the testimony objected to by the plaintiff was rightly received, and the instructions to the jury properly given; if it be not, then the testimony ought to have been excluded, and instructions, substantially as requested by the plaintiff, which were refused, given.

Is the matter pleaded as payment a defense? We think not. The bond given by the defendant, on which the action was brought, required Jenal to "promptly pay over to the person or officer entitled thereto, all money which" might "come into his hands by virtue of his said office," and to "faithfully account for all balances of money remaining in his hands at the termination of his office."

Sec. 94 of the revenue act, Gen. Statutes, 930, provides that the "treasurer, on going out of office, shall deliver to his successor in office all public moneys," etc., "in his possession." And the next section declares that if he "shall fail" * * * "to pay over all moneys with which he may stand charged at the time, and in the manner prescribed by law, it shall be the duty of the county clerk, on receiving instructions," * * * "to cause suit to be instituted against such treasurer and his sureties, or any of them, in the district court of his county."

Thus we see that, it being *money* that was in Jenal's hands, belonging to the county, both the law and his official bond united in requiring him to hand that over to his successor. The delivery of Parmer's certificates was not payment, for they were mere promises of a stranger to the county to pay money. The payment of money can be ef-

fectuated only by the delivery of that which by the law of the land is recognized as money. Even if Howard, the successor in office, did agree to accept these certificates in payment, which, however, he denies, no money having been realized from them, it could avail the defendants nothing as against the county. In the collection, care, and disbursement of the revenues in this state, such certificates are not recognized at all by the law, and no officer has any right whatever to deal in them on behalf of the public. If a treasurer invest the public funds in them, he is guilty of a highly penal offense. Criminal Code, sec. 124. It would indeed be a strange system of laws that would permit an act, denounced as a felony, to be pleaded in bar of an action brought to recover money lost by that act. But such is not the law. The only way in which it was possible for Jenal to have satisfied the law and his bond, and relieved himself and his sureties from responsibility as to this money, was to have handed it over to his successor in office. It being *money* which he held on the public account, it was *money* that the law and his bond required him to produce and hand over. Nothing else could suffice.

Such being our view of the law governing this case, it is unnecessary to notice the particular errors committed during the trial, in ruling upon the admissibility of evidence and in giving instructions to the jury.

The several rulings complained of were in harmony with the view of the law entertained by the judge, and clearly expressed in one of the instructions excepted to, which was in these words: "Mr. Jenal testifies that he had the amount due from him to the county on deposit in a bank at Yankton. That he requested Mr. Howard," his successor, "to go with him to that place and receive the money; that Mr. Howard refused so to do, but instructed Mr. Jenal to bring him a small portion thereof, and deposit the rest to his credit in the same bank. Now if you find that these instructions were given, and in pursuance thereof Mr. Jenal

did bring so much of the money as directed, and left the rest on deposit in the bank to the credit of Mr. Howard, changing the deposit from his name to that of Mr. Howard, and that this was agreed upon by both Howard and Jenal as a payment, and if you further find that the bank at that time had sufficient funds, and was able to pay the amount of such deposit, then such transaction would be a payment of such amount of $3500.00 to Mr. Howard, and you would be obliged to find for the defendant." '

This instruction, it will be observed, is in direct conflict with our views, as above expressed, concerning the duties and responsibilities of a county treasurer respecting the public funds intrusted to his care. Surely, the learned judge presiding at the trial must have overlooked the fact that Jenal himself, and not the Yankton banker, was the lawful custodian of the money, and the only one to whom the county could look for it until handed over to his successor. And that Jenal, the moment he deposited the money in the bank, violated the law, and was guilty of an act of embezzlement, for which he was not only civilly but criminally liable.

Very clearly to our minds the transaction referred to in this instruction was not a payment of the public money by Jenal to his successor, nor did it relieve the defendants from liability on their bond. The judgment must be reversed, and the cause remanded to the court below, to be proceeded with in conformity to this opinion.

REVERSED AND REMANDED.