## STATE OF NEBRASKA v. JOHN E. HILL ET AL.

### FILED JANUARY 3, 1894. No. 6407.

Action on Bond of State Treasurer: VENUE: CONVERSION.
Suit was brought in the district court of Douglas county upon
the bond of a former state treasurer. Some of the sureties upon
the bond resided in Douglas county and were there served with
summons, and summonses were issued and served upon the other
parties elsewhere. The petition alleged, first, the failure and
refusal of the treasurer to account for and pay over to his suc-
cessor a certain sum of money; second, the loaning to and de-
posit in the C. Bank, in Lancaster county, of a similar sum;
third, the loaning to and deposit in the M. Bank, in Douglas
county, of a certain sum; fourth, the loaning to and deposit in
the U. S. Bank, in Douglas county, of a still further sum. Judg-
ment was asked for the amount averred not to have been paid
over, and averred to have been deposited in the C. Bank. *Held*,
(1) that section 174 of the revenue law applies only to proceed-
ings for the purpose of distributing revenues upon their collec-
tion to the proper funds, and not to such suits as that at bar; (2)
that the proceeding was one upon an official bond or undertak-
ing of a public officer and must be brought in the county where
the cause or some part thereof arose; (3) that it was the duty of
the treasurer to account for and pay over moneys in his hands at
the close of his term of office to his successor in the county
where the seat of government is located, and that an action for
failing to do so must be brought in that county; (4) that it was
the duty of the treasurer to keep the moneys of the state in the
treasury at the seat of government, except as he should disburse
them or otherwise dispose of them as provided by law; that a
conversion took place upon his removal of moneys from the
treasury with the intention of making an unlawful use of them
by depositing them in the bank, and that the cause of action for
such conversion arose upon his removal of the moneys from the
treasury, and not upon their deposit.

ERROR from the district court of Douglas county. Tried
below before DAVIS, J.

*George H. Hastings, Attorney General,* and *E. Wakeley,*
for the state:

By the amended petition four breaches are alleged: First, the failure to pay over the sum of $236,361.60; second, the deposit in and loan to the Capital National Bank of Lincoln, in Lancaster county, of $236,361.60 and over; third, the deposit in and loan to the Merchants National Bank, in Douglas county, of $80,510 and over; fourth, the deposit in and loan to the United States National Bank, in Douglas county, of $159,748 and over. Therefore the cause of action did not arise in any particular county. The facts alleged constituted a conversion for which the state can recover, and the action "must be brought in the county in which the defendants, or some of the defendants reside, or may be summoned," and need not be brought in the county where the officer is elected and performs his official duty. (*McNee v. Sewell*, 14 Neb., 532; *State v. Keim*, 8 Neb., 63; *First Nat. Bank v. Gandy*, 11 Neb., 431; *Cedar County v. Jenal*, 14 Neb., 254; *Seward County v. Cattle*, 14 Neb., 144; *Bank v. Lanier*, 11 Wall. [U. S.], 369, 375; *Commercial Bank of Albany v. Hughes*, 17 Wend. [N. Y.], 94, 100; *Southern Loan Co. v. Morris*, 2 Barr [Pa.], 175; *Swartwout v. Mechanics Bank, New York*, 5 Denio [N. Y.], 555; Morse, Banking, sec. 289.)

*J. H. Broady*, for defendant in error John E. Hill:

Suit being on the official bond of the state treasurer, is covered by section 54 of the Code, and cannot be brought in Douglas county, unless the cause of action arose there. (Sec. 54, Code; *Clay v. Hoysradt*, 8 Kan., 80, 81.)

The petition does not show that any part of the cause of action arose in Douglas county, but on the contrary shows that all thereof arose in Lancaster county. The state treasurer must reside and keep his office at the seat of government, and if the taking of the public moneys from his office for deposit in banks was a conversion, the cause arose when, at his office at the capital, he removed it with intent to put it in a bank. Even if the depositing of public money in

banks be held a violation of official duty, there can be no cause of action against the treasurer for conversion, unless it appears that he failed to put it back into the treasury. (Constitution, sec. 1, art. 5; Con. Stats., sec. 3091; *State v. Baetz*, 44 Wis., 624; *Perley v. Muskegon County*, 32 Mich., 132.)

Utilizing banks in keeping the money of the state violated no law, nor duty of the treasurer, but was the proper thing to do; because it was the safest way to keep it, and was justified on the highest grounds of public policy. (*State v. McFetridge*, 54 N. W. Rep. [Wis.], 1.)

*T. M. Marquett, John H. Ames, Griggs, Rinaker & Bibb*, and *W. Q. Bell*, for bondsmen, filed printed arguments upon the same propositions discussed in brief of defendant Hill.

IRVINE, C.

John E. Hill was the treasurer of the state of Nebraska for the term ending in January, 1893. The other defendants herein were alleged in the petition to be the sureties upon his bond, which was conditioned that he should well and truly in all things perform the duties of his office during the continuance of his term as provided by law. This action was brought upon the bond in the district court of Douglas county, where some of the sureties resided, and the petition charges as breaches of the bond, substantially, as follows: That at the time of entering upon the duties of his office Hill had in his possession $1,524,554.74, received and collected as the moneys of the state of Nebraska, held as such, and belonging to the state, and that thereafter during his term Hill received moneys of the state, and that the said sums amounted to $4,200,834.50, making in all $5,725,389.24; that out of said moneys he paid and disbursed divers sums for lawful purposes, but that at the end of his term, when he surrendered his office to his successor, there still remained in his possession and control

$1,144,556.42, which it was his duty to pay over and deliver to his successor; that he failed and refused to pay over said moneys, except that, as plaintiff is informed, he did pay over some small sums of money, the amount of which is unknown to plaintiff, and delivered to his successor sundry certificates of deposit in certain banks or choses in action which he in some manner induced his successor to accept in place of money, amounting in the aggregate to the sum last mentioned; that Hill's successor has since received, by means of such certificates or choses in action, certain sums, the amount of which is unknown to the plaintiff, but that Hill failed and refused to pay over, disburse, or account for the sum of $236,364.60 and more, whereby the state has sustained damages in the sum last mentioned. The defendants residing in Douglas county were served with summons there, and the other defendants were served in the counties of their respective residences. The defendants not residing in Douglas county, by several different instruments, entered special appearances and objected to the jurisdiction of the court. Subsequently, by leave of court, an amended petition was filed, which, so far as it alleges the breach complained of in the original petition, is substantially similar thereto, except that it alleges that the sum which Hill failed and refused to pay was $236,361.60. The amended petition alleges a further breach of the bond by charging that Hill, during his term of office, deposited in and loaned to the Capital National Bank of Lincoln, located and doing business in Lancaster county, $236,361.60, thereby converting the said moneys to his own use; and for a further breach, that he also deposited in and loaned to the Merchants National Bank of Omaha, located and doing business in Douglas county, $80,510 and over; and for a still further breach, that he deposited in and loaned to the United States National Bank of Omaha, located in and doing business in Douglas county, $159,748 and over. The amended petition closes with an allegation that by

reason of the premises the plaintiff has sustained damages in the sum of $236,364.60, and prays judgment for that amount. The defendants, non-residents of Douglas county, renewed their special appearance and objections to the jurisdiction of the court. While the objections of these defendants are set forth in different language, they are all to the effect that the petition shows upon its face that the action is one within section 54 of the Code of Civil Procedure, and that the transactions complained of occurred in Lancaster county and not in Douglas. The district court sustained these objections and dismissed the action for want of jurisdiction.

The state prosecuted error, assigning numerous errors, all of which, however, present the single question as to whether or not the district court erred in holding that it had no jurisdiction of the action.

The statutes which it is claimed relate to the subject are sections 54 and 60 of the Code of Civil Procedure, and section 174 of the revenue act. Sections 54 and 60 are in title 4 of the Code relating to counties in which actions are to be brought. By section 54 it is provided: "Actions for the following causes must be brought in the county where the cause or some part thereof arose. * * * Second—An action against a public officer, for an act done by him in virtue or under color of his office, or for a neglect of his official duty. Third—An action on the official bond or undertaking of a public officer." Sections 51 to 59, inclusive, all relate to the places where different classes of actions therein specified are to be brought. Section 60 provides: "Every other action must be brought in the county in which the defendant, or some of the defendants, resides, or may be summoned." The first portion of section 174 of the revenue act is as follows: "When suit is instituted in behalf of the state, it may be in any court of record in this state having jurisdiction of the amount; and process may be directed to any county in the state."

Which of these statutes applies to the case at bar? It is urged by plaintiff in error that the case is to be governed by section 174 of the revenue act, as being a special provision relating to this class of actions. That section must be taken with its context. The title of the act is, "An act to provide a system of revenue." The act, in its different parts, relates to the listing and assessment of property for taxation; the levying and collecting of taxes, including the seizure and sale of property for taxes; the distribution of taxes, when collected, to the proper funds and to the proper custodians. The custody of such funds, their disbursement, and the accounting therefor by officers charged with their custody and disbursement, are subjects neither within the title nor the provisions of the act, but are provided for in other statutes. The sections immediately preceding section 174 provide for the settlement by treasurers and other collectors of taxes with the custodians of the funds for the supply of which the taxes were levied and collected, and for the payment of taxes, when collected, to such custodians. Section 173 provides for a suit by the auditor against county treasurers for failure to make settlements on account of taxes collected for the state. Then follows the provision quoted from section 174. The remainder of section 174 provides for summary procedure against officers or persons "whose duty it is to collect, receive, settle for, or pay over any revenues of the state." Section 175 extends the remedy by suit to cities, towns, villages, etc., against treasurers or other officers collecting or receiving funds for their use. We think it is manifest, from the purpose of the whole act and the subject-matter of its immediate context, that section 174 relates only to suits for the purpose of getting the revenue out of the hands of the collectors into the treasury and not to actions based upon the misappropriation of funds after they have reached the treasury. An additional reason for so construing the section is that to extend it further would inject into the act

a subject not within its title and expose it to the constitutional objections discussed in *Holmberg v. Hauck,* 16 Neb., 337; *Foxworthy v. City of Hastings,* 23 Neb., 772; *Touzalin v. City of Omaha,* 25 Neb., 817; *Trumble v. Trumble,* 37 Neb., 340.

As between section 54 and section 60, it would seem clear that the action was one of those designated in section 54, and that, therefore, that section would govern rather than section 60, which is simply a general provision meant to apply to such cases as should not fall within any of the preceding special provisions. But it is said that, in so far as the action is based upon the failure of Hill to account for and pay to his successor, the breach is purely negative in its character, and cannot be said to be at all localized; that the cause of action did not, therefore, arise at any particular place, and that the case must fall within the general provision of section 60. In support of this proposition it is argued that a petition merely alleging the failure to account and pay over in Lancaster county would be demurrable, because it would not appear that there was not an accounting and payment elsewhere. This may be true. An accounting and payment elsewhere than at the capital might protect the state and discharge the treasurer from liability, but we entertain no doubt that it was his duty to account and pay over at the capital, and that the state could insist upon his doing so there and not elsewhere. By section 1, article 5, of the constitution it is provided that the treasurer shall reside at the seat of government during his term of office and keep the proper records, books, and papers there. It is only at the capital, therefore, that the books and accounts could rightfully be for the purpose of an accounting. This constitutional provision is re-enforced by article 4 of chapter 83, Compiled Statutes, wherein the treasurer is required to reside, and keep his office at the seat of government, to account for and pay over all moneys received by him as such treasurer to

his successor in office, and deliver all books, vouchers, and effects of office to him. This could only be done where such office, books, and vouchers are kept. The breach charged, therefore, was the failure to do an act which the law required him to do at a particular place, and the case falls squarely within the rule established in *McNee v. Sewell*, 14 Neb., 532. In that case the action was upon the bond of the sheriff of Thayer county, who had neglected to return executions issued out of the district court of Lancaster county. The suit was held to have been rightfully brought in Lancaster county, because the judgments were recovered and executions there issued, and the executions should have been there returned. In other words, the breach of the bond was the failure to do what the law required to be done in Lancaster county, precisely the same kind of a breach as is here averred, by reason of the failure to pay over the money.

The case, then, falls within section 54 of the Code of Civil Procedure, and the question thus arises, did the cause of action, or any part thereof, arise in Douglas county? For the reasons just stated the cause of action, so far as it is based upon the failure of Hill to account for and pay over to his successor in office the moneys coming into his hands as treasurer, must be determined to have arisen in Lancaster county, where the seat of government is fixed. No other breach of the bond is alleged in the original petition. The amended petition added what is charged as three additional breaches: First, the deposit in the Capital National Bank of $236,361.60 and over. It is clear that this does not state a cause of action, any part of which arose in Douglas county. Second, the deposit in the Merchants National Bank of Omaha of $80,510 and over; and third, the deposit in the United States National Bank of Omaha of $159,748 and over. If jurisdiction is vested in the district court of Douglas county it must be because of the averments of deposits in the two Omaha banks, and two

questions are presented upon this aspect of the case: (1) Do the averments of the Omaha deposits set forth facts constituting a cause of action upon the bond? (2) Do these averments show that part of the cause of action arose in Douglas county?

Upon examination of the original petition it is found that it averred a failure to pay over the amount of $236,-364.60, and judgment was asked for that amount. In the amended petition the amount stated is $236,361.60, which is the same amount as the amended petition avers was deposited in the Capital National Bank of Lincoln. The prayer for judgment is still for $236,364.60. It is also averred that Hill turned over to his successor and induced his successor to accept sundry certificates of deposit, upon which were realized certain sums of money unknown to plaintiff, but of the whole amount for which Hill was accountable, $236,361.60 and more, remains unaccounted for. While, perhaps, under the Code the common law rule that pleadings are to be taken most strongly against the pleader may not retain all its original force, still pleadings must be construed reasonably; and it is not to be inferred that a pleader will omit averments manifestly to his advantage, or insert those manifestly to his disadvantage. It is a reasonable and almost necessary inference from the amended petition that the moneys deposited in the Omaha banks were eventually received by the state, and that the amount for which Hill failed to account was the amount deposited in the Capital National Bank. The state could suffer no damage and could recover nothing upon the bond by reason of the Omaha deposits if, before action brought, Hill had paid over to the state the money so deposited. The object of requiring bonds from officers is to have such bonds as security for damages sustained, and no cause of action arises upon such a bond because of a technical breach unaccompanied by damage. (*Commonwealth v. Reed,* 3 Bush [Ky.], 516; *Jones v. Biggs,* 1 Jones' Law [N. Car.], 364;

*State v. Baetz*, 44 Wis., 624.) Possibly a petition simply alleging the deposit without averring non-payment might state a cause of action; but should it aver in terms, as it does here by plain inference, that no loss whatever had resulted, no cause of action would be stated.

Finally, assuming that these averments set out actionable breaches of the bond, did the cause of action, or any part thereof, arise in Douglas county? From the statutes already quoted and from the decisions of this court (*State v. Keim*, 8 Neb., 63; *First Nat. Bank of South Bend v. Gandy*, 11 Neb., 431; *Cedar County v. Jenal*, 14 Neb., 254; *Wayne County v. Bressler*, 32 Neb., 818), it is clear that it is the duty of both state and county treasurers to keep the money coming into their official custody in specie, except where by recent statutes they are permitted to invest or deposit it, and then such investment or deposit must be made only in the manner provided by law. Hill's duty was to keep the money in the treasury at Lincoln. He had no right to invest it in any manner, or to deposit it. Assuming, then, that he took the money from the treasury and deposited it in the Omaha banks and the state had not received it back, when did the conversion take place? As stated by Alderson, B., in *Fouldes v. Willoughby*, 8 M. & W. [Eng.], 540, "Any asportation of a chattel for the use of the defendant or a third person amounts to a conversion," and, as said by Lord Abinger in the same case, "In order to constitute a conversion it is necessary either that the party taking the goods should intend some use to be made of them by himself or by those for whom he acts, or that, owing to his act, the goods are destroyed, to the prejudice of the rightful owner," and, as stated in *McPartland v. Read*, 11 Allen [Mass.], 231, "Every tortious taking with intent to apply chattels to the use of the taker or some other person than the owner is a conversion." When Hill removed the money from the treasurer's office with the intent of depositing it contrary to law, he was guilty of a

conversion and a cause of action accrued. Suppose, instead of depositing the money in Omaha, he had deposited it in New York or Chicago, could it be said that it was only upon the deposit of the money that a cause of action accrued, and that no suit would lie in this state? The wrong was done and completed, so far as the state was concerned, when the money was removed from its treasury at Lincoln. It is said there is nothing in the petition to show that the money had ever reached the treasury, but that it was probably money collected in Douglas county and turned over to the treasurer there. The answer to this is that there is nothing in the petition from which it can be inferred that the latter was the fact. It was the duty of the Douglas county treasurer to make a settlement and pay over the money in Lincoln. It is to be presumed that he did so there.

It is argued that section 124 of the Criminal Code makes it a crime to lend the state funds to any corporation or individual, and that the deposit of money in banks is lending money within the prohibition of this section. But it does not follow, because the depositing of money may constitute or be evidence of a crime, that the civil cause of action arose only upon that deposit. The same section makes it a crime to convert the money to his own use. As we have shown, the conversion took place in Lancaster county, and the civil cause of action arose upon the commission of the first offense and did not in anywise depend upon the commission of the second.

The case of *Clay v. Hoysradt*, 8 Kan., 74, is relied upon by the plaintiff in error. In that case suit was brought in Douglas county to enjoin the enforcement of certain judgments obtained before a justice of the peace in Leavenworth county in favor of Hoysradt against Clay, and which judgments, it was alleged, had been satisfied. It was held that the justice of the peace and constable being officers of Leavenworth county, and the illegal acts complained of

committed there, the case fell within the section of the Kansas Code, identical in language with section 54 of our Code, and that the cause of action arose in Leavenworth county, notwithstanding the fact that Hoysradt himself lived in Douglas county and was there served with summons. We cannot see how this case militates against the view we have taken. On the contrary, if it has any bearing upon this case, it rather tends to confirm our views. So, too, the case of *Fay v. Edmiston*, 28 Kan., 108, cannot be regarded as authority, because it is directly in conflict with the case of *McNee v. Sewell* already cited. We think the judgment of the district court was right and it should be

AFFIRMED.

MAXWELL, C. J., dissenting.

This is an action on behalf of the state of Nebraska to recover from the defendant, a former state treasurer, and his sureties, the sum of $280,510. The action was brought in Douglas county, and each of the defendants objected to the jurisdiction of the court of that county; that the action was not brought in the proper county. Immediately after said objections were filed the state filed an amended petition, wherein it alleges: "Of the said moneys so received and held by the said John E. Hill as such state treasurer and belonging to the state of Nebraska, he, the said Hill, during his said last term of office, and after the execution and delivery of the said bond, unlawfully, and contrary to his duty as such state treasurer, deposited in and loaned to the Capital National Bank of Lincoln, Nebraska, located and doing business in the county of Lancaster, in the state of Nebraska, the aggregate sum of $236,361.60 and over; and in the United States National Bank of Omaha, Nebraska, located and doing business in the county of Douglas, in the state of Nebraska, the aggregate sum of $159,748 and over; and in the Merchants National Bank of Omaha, Nebraska,

located and doing business in the county of Douglas, in the state of Nebraska, the aggregate sum of $80,510 and over, thereby converting said moneys to his own use. The said moneys were so deposited and loaned from time to time in sums less than the said aggregate sums, but the plaintiff is not informed, and has not the means of ascertaining, the precise dates and amounts of the said several sums making up the said aggregate, and cannot more particularly set forth the same." A notice was duly served on each of the defendants of said amendment. The objections to the jurisdiction were sustained by the court and the action dismissed for want of jurisdiction.

The sole question presented is the right to bring the action in Douglas county. Section 54 of the Code provides: "Actions for the following causes must be brought in the county where the cause, or some part thereof, arose: First—An action for the recovery of a fine, forfeiture, or penalty imposed by a statute; except that, when it is imposed for an offense committed on a river, or other stream of water, or road which is the boundary of two or more counties, the action may be brought in any county bordering on such river, water-course, or road, and opposite to the place where the offense was committed. Second—An action against a public officer, for an act done by him in virtue or under color of his office, or for a neglect of his official duty. Third—An action on the official bond or undertaking of a public officer." Now, where did the cause of action arise? If the allegations of the petition are true, the defendant Hill took the money of the state and, in the face of a direct prohibition in the statute, converted the same to his own use by depositing it in two banks in Omaha. Section 124 of the Criminal Code declares: "If any officer or other person charged with the collection, receipt, safe keeping, transfer, or disbursement of the public money, or any part thereof, belonging to the state or to any county, or precinct, organized city or village, or school district in the state, shall con-

vert to his own use, or to the use of any other person or persons, body-corporate, association or party whatever, in any way whatever, or shall use by way of investment in any kind of security, stock, loan, property, land, or merchandise, or in any other manner or form whatever, or shall loan, with or without interest, to any company, corporation, association, or individual, any portion of the public money, or any other funds, property, bonds, securities, assets, or effects of any kind, received, controlled, or held by him for safe keeping, transfer, or disbursement, or in any other way or manner, or for any other purpose; or, if any person shall advise, aid, or in any manner participate in such act, every such act shall be deemed and held in law to be an embezzlement of so much of the said moneys or other property, as aforesaid, as shall be thus converted, used, invested, loaned, or paid out as aforesaid, which is hereby declared to be a high crime, and such officer or person or persons shall be imprisoned in the penitentiary not less than one year nor more than twenty-one years, according to the magnitude of the embezzlement, and also pay a fine equal to double the amount of money or other property so embezzled as aforesaid, which fine shall operate as a judgment at law on all of the estate of the party so convicted and sentenced, and shall be enforced to collection by execution or other process, for the use only of the party or parties whose money or other funds, property, bonds, or securities, assets, or effects of any kind as aforesaid, has been so embezzled." We were told on the argument by the attorneys for the defendants that this section was practically nullified and that no conviction had ever taken place on it. This may be true, but still it is the law of this state, as much so as that against larceny, robbery, or murder, and it is not in the power of this court to nullify it.

The above section is substantially the act of the Ohio legislature, approved April 12, 1858. (S. & C., 1610.)

This act was passed for the express purpose of prohibiting the loaning of the public funds. The experience of other states has been that the loaning of such funds tends to foster corruption in its worst forms by placing the surplus funds of the state in the hands of a few persons to be used for their personal benefit. These persons stand in with the public official, whoever he may be, and manage to keep on hand a much larger surplus than necessary, which is used for private gain. Prior to 1835 the surplus funds of the United States were kept in banks. The effect was found to be favoritism and corruption, which had a demoralizing effect upon not only party organization, but upon free government itself. The president in that year ordered the public funds withdrawn from the depositories and kept in the treasury. From that time till now the surplus funds of the United States, except in certain special cases, as where depositories are designated for certain purposes, are kept in the hands of the treasurer. It is true that a sub-treasury act was afterwards passed for the greater security of the public funds, and that they are now principally kept in the sub-treasury or some of its branches. Now, suppose the United States treasurer should loan the funds on his personal account and receive the interest thereon. He would be clearly guilty of converting the public funds to his own use. So far as I am aware, no attempt of that kind has ever been made. The statute of Nebraska places an absolute prohibition upon the loaning of public funds or depositing the same in a bank. Stronger language could not be used. The offense is declared to be embezzlement, and the punishment is fixed at not less than one nor more than twenty-one years' imprisonment in the penitentiary. But it is said that the treasurer is guilty of conversion by carrying the funds out of Lancaster county, and, therefore, that county is the only one where the action can be brought. The answer is, the prohibition of the statute is not against carrying the funds into another

county, but in loaning the same to one or more banks. The overt act, the loaning, took place in Douglas county, and there alone can a prosecution be had, and no prosecution for that offense could be instituted and maintained in Lancaster county.

In 1879 the legislature passed an act "to provide for the safe keeping of the moneys belonging to the state," the first three sections being as follows:

"Section 1. Whenever there shall have accumulated in the hands of the state treasurer moneys of the state to an amount in excess of the sum of $100,000, the state treasurer shall, in writing, notify the governor and auditor of the state of that fact, and thereupon, within three days after the service of such notice, the governor, auditor, and treasurer shall meet and determine whether such excess is necessary to be retained in the treasury for the purpose of meeting the current demands thereon; and the record of said notification, and the proceedings of said meeting, and of its finding, shall be made and signed by each of such officers, and preserved in the office of the auditor, who shall act as the secretary of such meeting.

"Sec. 2. In case said officers shall find that said excess is not necessary to meet the current demands upon the treasury, the same shall be immediately invested in United States four per cent bonds, by the treasurer, who shall deposit the same in some safe deposit, to be designated by the governor, auditor, and treasurer, in writing, signed by them and made of record in the auditor's office, and there kept until it shall become necessary to convert the same into money, which necessity shall be determined and the record thereof kept in like manner as hereinbefore provided, and a statement of any such investment or sale under oath shall be published within ten days after the same is made, in some newspaper published at the capital, to be designated in writing by the governor. There shall also be published in the same paper a monthly statement, under oath, of the amount

of cash balance in the state treasury and of the amount invested as aforesaid.

"Sec. 3. Any officer charged with the duties hereinbefore mentioned who shall make or publish any false statement, or swear falsely in respect to any matter or thing, in respect to which a sworn statement is herein required, shall be deemed guilty of perjury, and shall be prosecuted and punished accordingly." (Laws 1879, 152.)

This act was amended in 1891, the first two sections being as follows:

"Section 1. The state treasurer shall deposit, and at all times keep in deposit for safe keeping, in the state or national banks, or some of them doing business in the state, and of approved standing and responsibility, the amounts of money in his hands belonging to the several current funds in the state treasury, and any such bank may apply for the privilege of keeping on deposit such funds or some part thereof; all such deposits shall be subject to payment when demanded by the state treasurer on his check and by all banks receiving and holding such deposits as aforesaid, shall be required to pay, and shall pay, to the state for the privilege of holding any such deposit not less than three per cent per annum upon the amounts so deposited, as hereinafter provided, and subject also to such regulations as are imposed by law and the rule adopted by the state treasurer for receiving and holding such deposits.

"Sec. 2. The amount to be paid by any and all banks under the provisions of this act for the privilege of keeping public funds on deposit shall be computed on the average daily balances of the public moneys kept on deposit therewith, and shall be paid and credited to the state quarterly on the first days of January, April, July, and October of each and every year, and the treasurer shall require every such depositary to keep separate accounts of such several funds of the state as may be deposited, showing the name of each fund to which the same belongs and the amounts

and sums paid to the state for the privilege of keeping the same on deposit as aforesaid, and to each of said funds respectively shall be credited directly to the account of the fund or funds so held on deposit, in proportion to the amount of such funds so held."

There is also a provision for designating the bank where deposits are to be made. The act did not take effect until the expiration of the term of the then treasurers.

This act, therefore, qualifies section 124 of the Criminal Code, and provides for the safe keeping of the public money, and is no doubt a valid law. If the treasurer, therefore, without such directions, deposits money in a bank, the statute declares him guilty of embezzlement, and it is a diversion of the money to his own use. This question was before the court in *First Nat. Bank of South Bend v. Gandy*, 11 Neb., 431, and it was held that public money thus deposited was subject to garnishment for the private debt of the officer.

In *State v. Keim*, 8 Neb., 67, a former state treasurer had deposited $2,000 in a bank at Falls City; and the bank failed, and an attempt was made to saddle the loss on the state. The court, by COBB, J., held that the treasurer and his sureties must make the loss good, as the depositing was in violation of law. It is said: "The depositing of the $2,000 in the bank of the defendants was a loan in its legal effect. (*Commercial Bank of Albany v. Hughes*, 17 Wend. [N. Y.], 100; *Southern Loan Co. v. Morris*, 2 Barr [Pa.], 175.) The state could not have made this loan in point of fact without the intervention of some officer or agent. No officer or agent of the state could make such loan or deposit without a violation of the law above referred to, which violation would render such officer or agent both personally and officially liable to the state for the money so loaned or deposited, while no such unauthorized act would bind the state." The same rule was adhered to in *Cedar County v. Jenal*, 14 Neb., 254,

and is a general rule. (*Seward County v. Cattle*, 14 Neb., 144; *Commercial Bank of Albany v. Hughes*, 17 Wend. [N. Y.], 94; *Swartwout v. Merchants Bank*, 5 Denio [N. Y.], 555; *Perley v. County of Muskegon*, 32 Mich., 132.)

Now, where did the cause of action arise? In my view, where the breach of the condition occurred. We are referred to the case of *Clay v. Hoysradt*, 8 Kan., 58-74, as establishing a different rule. In that case Hoysradt recovered three judgments against George P. Clay before a justice of the peace of Leavenworth county, Kansas. These were receipted for in full by Hoysradt upon the payment of but little more than one-half of the face of the judgments. After giving such receipt, Hoysradt, who seems to have been a resident of Douglas county, Kansas, caused an execution to be issued upon the judgments for the residue thereof and given to a constable of Leavenworth county, who levied upon property of Clay in that county. The action was brought against Hoysradt in Douglas county, and the justice by whom the judgments were rendered and constable were joined with him, and the court held properly, I think, that the action must be brought in the county where the acts were performed.

In *Fay v. Edmiston*, 28 Kan., 109, this question again came before the supreme court of that state. In that case Judge Valentine says: "Where the action is against the officer and his sureties upon his official bond, we should think that the action might properly be commenced in the county where the cause of action arose, that is, in the county where the breach of the bond was committed, and that the court from which the writ was issued would not have the sole and exclusive jurisdiction, even if it had jurisdiction at all." The same rule was applied in this court in the case of *McNee v. Sewell*, 14 Neb., 532. In that case McNee was sheriff of Thayer county and executions were issued on certain judgments against one Gray in the district

court of Lancaster county and sent to McNee as sheriff of Thayer county, who neglected to execute or return the same. Afterwards, proceedings in amercement were instituted against him in Lancaster county, and the court of that county found that he was liable and amerced him in the amount of each of the said executions; and this court held that the action was properly brought in Lancaster county, and that the sureties were liable on the judgment. The leading case in regard to local and transitory actions is *Mostyn v. Fabrigas*, 1 Cowp. [Eng.], 161, 1 Smith, Leading Cas. [6th Am. ed.], part 2, 934, where there is a very clear statement of the law in regard to actions that are local and transitory; and a fair deduction from the cases therein referred to shows that officers may be sued in the county where the alleged wrongful act was committed, unless the statute expressly requires it to be brought elsewhere. Stephen, in his work on Pleading, says that at common law the plaintiff "may lay the venue in the action in any county, and upon issue joined the venire issues into the county where the venue in the action is laid," but the "defendants were enabled to protect themselves from any inconvenience which they may apprehend" by showing that the cause of action arose wholly in the county to which it was proposed to change the venue. If, however, the plaintiff would undertake at the trial to give ample evidence that a part of the cause of action arose in the county where the venue was laid the venue could not be changed. (Steph., Pl. [4th Am. ed.], 290.) At common law, "actions against constables, headboroughs, church-wardens, and persons aiding and assisting them, are to be laid within the county where the injury complained of has been committed." (3 Phillips, Ev. [4th Am. ed.], 727*.) At common law, therefore, the action was to be brought where the cause of action arose, and that is the case under our statute. Now, where did the cause of action arise in this case? If the allegations of the petition are true, the defendant

Hill, in violation of law, deposited in Omaha banks a very large amount of money belonging to the state. As declared by statute and the decisions of this court he thereby converted it to his own use. This was done in Douglas county and not in Lancaster county, and it is very clear that the district court of Lancaster county could have no jurisdiction of that embezzlement. The case, therefore, is clearly within the provisions of section 54 of the Code, and the action being rightly brought upon the official bond, all causes of action upon such bond may be included in the petition, as the case falls within the familiar rule that where jurisdiction is entertained for one purpose the court will entertain jurisdiction and render complete relief. (Story, Eq. Juris., sec. 64*k*, and cases cited.)

The title of the revenue law of 1879 is, "An act to provide a system of revenue." The third definition of the word given by Webster is "The annual produce of taxes, excise, customs, duties, rents, &c., which a nation or state collects and receives into the treasury for public use." The money in question is that of the state levied and collected from the taxpayers, but which the treasurer has wrongfully appropriated to his own use. In other words, it is a part of the revenue of the state, placed where the treasurer is reaping a private benefit from its use. As I understand the law, all matters which properly relate to the revenue of the state may be included in the act. If that is not so, then there is no power for any county, city, municipality, school district, or other subdivision of the state to sue for the wrongful conversion and misappropriation of its funds, because the prohibition applies to each of them equally with the state. But no one will contend for such a construction as that.

Section 174 provides: "When suit is instituted in behalf of the state, it may be in any court of record in this state having jurisdiction of the amount; and process may be directed to any county in the state. If any proceeding

against any officer or person whose duty it is to collect, receive, settle for, or pay over any of the revenues of the state, whether the proceeding be by suit on the bond of such officer or person, or otherwise, the court in which such proceeding is pending shall have power, in a summary way, to compel such officer or person to exhibit on oath a full and fair statement of all moneys by him collected or received, or which ought to be settled for or paid over, and to disclose all such matters and things as may be necessary to a full understanding of the case, and the court may, upon hearing, give judgment for such sum or sums of money as such officer or person is liable in law to pay. And if, in a suit upon the bond of any such officer or person, he or his sureties, or any of them, shall not for any reason be liable upon the bond, the court may, nevertheless, give judgment against such officer and such of his sureties as are liable, for the amount he or they may be liable to pay, without regard to the form of the actions or pleadings."

Section 175 provides that cities, towns, villages, or corporate authorities, or persons aggrieved, may prosecute suit against any treasurer or other officer collecting or receiving funds, for their use, by suit upon the bond of the treasurer, in any court of competent jurisdiction, whether the bond has been put in suit at the instance of the auditor or not. Cities, towns, villages, and other corporate authorities or persons, shall have the same rights in any suits or proceedings in their behalf as is provided in case of suits by or in behalf of the state.

These are special provisions which control general provisions. Under these provisions the state is expressly authorized to sue the treasurer in any county where service can be had. Would it not be a strange anomaly that a city, village, or other municipality—in other words, a small part of the people in their corporate capacity—may sue in any county where service can be obtained, but the state,

the whole people in their corporate capacity, are restricted to one county? I do not so understand the law and cannot give my consent to so narrow a construction of the statute. If the facts stated in the amended petition are true, and for the purpose of the motion they are presumed to be so, it is very clear to my mind that the district court of Douglas county has jurisdiction, and that the judgment of the court below should be reversed and the cause remanded for trial.