SAMUEL A. STONER ET AL. V. KEITH COUNTY.

FILED MAY 6, 1896. No. 6501.

| 48 | 279 |
|----|-----|
| c53 | 186 |
| 48 | 279 |
| 58 | 567 |
| 58 | 574 |
| 48 | 279 |
| 59 | 471 |

1. **Officers: Fees: Extra Compensation.** A public officer must discharge all the duties pertaining to his office for the compensation allowed by law, and will not be allowed compensation for extra work unless it is authorized by statute. (*State v. Silver*, 9 Neb., 88; *Bayha v. County of Webster*, 18 Neb., 131.)

2. **County Treasurers: "Moneys Collected."** The words, "on all moneys collected by him"—the county treasurer—in section 20, chapter 28, Compiled Statutes, in relation to fees, refer solely to such taxes as he has collected from the taxpayers. (*Taylor v. Kearney County*, 35 Neb., 381.)

3. ———: **Fees.** A county treasurer is not entitled to a commission or collection fee on funds, the proceeds of sales of bonds paid or delivered to him as such officer.

4. ———: **Sale of Bonds: Failure to Turn Over Proceeds: Pleading and Proof.** In an action on the bonds of a county treasurer, the county pleaded the reception by him of the proceeds of the sales of certain bonds, the disbursement of a part of the funds, and the failure to turn over to his successor in office an amount of such money. The treasurer and his bondsmen admitted receiving the

money, but as to his failure to turn any portion thereof over to his successor in office the answer was a general denial. The county introduced proof showing that the treasurer charged a per cent of the amount of the proceeds of the bonds as collection fees, which sum he retained and did not pay to his successor. *Held,* Under the issues joined by the pleadings, to be sufficient to show a failure to comply with the obligations of his bonds and that it did not devolve upon the county to further show that the treasurer had received all the fees to which he was by law entitled for his services; that if there was any sum or sums due the treasurer from the county, the legitimate subject of set-off or counter-claim in his favor, or which he had allowed to remain in the county treasury in payment of the amount claimed by the county as before indicated, they were matters constituting a defense and should have been pleaded as such and proved.

5. Principal and Surety: ALTERATION OF BOND. Sureties on a bond are released by a material alteration of the instrument evidencing their obligation, made without their knowledge and consent.

6. ———: ———: LIABILITY OF SURETIES. The signing of a bond of a county treasurer after its approval by the county board, by additional sureties, the same being done without the knowledge and consent of the sureties who had attached their signatures thereto prior to the time it was approved, avoided the obligations of the bond as to such prior sureties and released them from any liability thereunder for any subsequent failure or default of the principal in the fulfillment of the conditions of the bond.

7. ———: ———: ———. *Held further,* That the parties who signed the bond subsequent to its approval, as additional sureties, must be presumed to have known what would be the effect of such signing, including the discharge of the prior sureties, and they became bound and liable for any subsequent failure or default of the principal in the bond to perform its obligations.

8. Official Bonds: LIABILITY OF SURETIES. A bond of an officer, which is presented to a county board and approved by it, binds all parties who signed it as sureties notwithstanding that they may have signed the instrument conditionally, if the bond is perfect on its face and the board possessed no notice of the conditional signing and there was nothing to raise the duty of inquiry as to the manner of the execution of the bond.

9. ———: APPROVAL. Under the provision of section 7, chapter 10, Compiled Statutes, that "The official bonds of all county, precinct, and township officers shall be approved by the county board," in approving bonds the board acts as a body. The approval is not the act of a member or individual members thereof as persons. It is the act of the board as a body.

10. ———: ———. A county treasurer's bond is to be approved by the county board.

11. ———: ———: CONDITIONAL LIABILITY OF SURETY: NOTICE. The

knowledge of one member of a county board, at the time of its approval by them, of the conditional signing of a county treasurer's bond by the sureties, not shown to have been imparted to the board, is not knowledge of or notice to the board of such fact.

12. ———: ADDITIONAL BOND: CONSIDERATION. An additional, or second bond, was executed, delivered, and approved during the term of office of a county treasurer. *Held*, That there was sufficient consideration therefor.

13. **Evidence.** It is not competent to change or vary the terms of a written contract by parol evidence.

14. **County Treasurers:** TURNING OVER FUNDS: TIME. A county treasurer, at the close of his term of office, must pay over to his successor all moneys in his hands belonging to the county, or for which he is liable to account. If there has been no proof of any particular date at which it is claimed that the money was misappropriated by a county treasurer, or other proof than that he failed to account for and pay over to his successor at the close of the term of office all funds for which he was liable to account, it will be presumed to have occurred at the close of the term and the liability accrues as of such time.

15. **Action on Treasurer's Bonds:** PARTIES. Where the bond of a county treasurer was presented and approved at or prior to the commencement of his term of office, which bond was signed by additional sureties during the term and also an additional bond given and approved, and the default or failure, if any, of the principal in the discharge of the duties of the office occurred at the close of his term, it was proper to join all the sureties as defendants in one action on the bonds.

16. ———: DIRECTING VERDICT. The evidence *held* to warrant the trial judge in instructing the jury to return a verdict in favor of the county against certain of the defendants named in the instruction.

ERROR from the district court of Keith county. Tried below before NEVILLE, J.

The facts and issues are stated in the opinion.

*Grimes & Wilcox,* for plaintiffs in error:

The evidence should have been passed upon by the jury, and it was error to direct a verdict for plaintiff. (*Grant v. Cropsey,* 8 Neb., 205; *Eaton v. Carruth,* 11 Neb., 231; *Johnson v. Missouri P. R. Co.,* 18 Neb., 690; *Houck v. Gue,* 30 Neb., 113.)

A material change in a contract without the consent of the surety will release him, though the change may be

a benefit to him. (Brandt, Suretyship & Guaranty, secs. 332, 335, 338; 2 Parsons, Notes & Bills [2d ed.], 557; *Weir Plow Co. v. Walmsley*, 11 N. E. Rep. [Ind.], 232; *Berryman v. Manker*, 9 N. W. Rep. [Ia.], 103; *Sullivan v. Rudisill*, 18 N. W. Rep. [Ia.], 856; *Bowers v. Cobb*, 31 Fed. Rep., 678; *Hagler v. State*, 31 Neb., 145; *State v. Craig*, 58 Ia., 238; *Dair v. United States*, 16 Wall. [U. S.], 1; *Barnes v. Van Keuren*, 31 Neb., 168; *Henry & Coatsworth Co. v. Fisherdick*, 37 Neb., 207.)

Any unauthorized variation in any agreement which a surety has signed, that may prejudice him, or may substitute an agreement different from that which he came into, discharges him. (*Smith v. United States*, 2 Wall. [U. S.], 219; *State v. Craig*, 58 Ia., 238; *Hagler v. State*, 31 Neb., 148.)

The substituted surety having signed the bond without the knowledge of its alteration, and under the supposition that the other signers were his co-sureties, the bond is void as to him, as he never undertook to become the sole surety. (*State v. McGonigle*, 13 S. W. Rep. [Mo.], 758.)

If the condition, known to the creditor, upon which the surety agrees to become bound, is not complied with, the surety is discharged. (Brandt, Suretyship & Guaranty, secs. 341, 350; *State v. Allen*, 10 So. Rep. [Miss.], 473; *Hessell v. Johnson*, 30 N. W. Rep. [Mich.], 209.)

Evidence of non-compliance with the conditions of a bond may be given in defending an action on the bond. (*Hall v. Parker*, 37 Mich., 590.)

There was no consideration for the second bond and it is not binding. (*Owens v. Tague*, 29 N. E. Rep. [Ind. App.], 784; *Kansas Mfg. Co. v. Gandy*, 11 Neb., 448; *Barnes v. Van Keuren*, 31 Neb., 165.)

Unless the bond is retrospective, the sureties are only bound for moneys in the hands of the officer when the bond was executed and for that which subsequently goes into his hands. (*Mahaska County v. Ingalls*, 16 Ia., 81; *Bessinger v. Dickerson*, 20 Ia., 261; *Warren County v. Ward*, 21 Ia., 84; *Farrar v. United States*, 5 Pet. [U. S.], 373.)

*J. R. Brotherton,* contra:

A public officer must discharge all the duties of his office for the compensation allowed by law, and is only entitled to such fees as are authorized by statute. (*State v. Silver*, 9 Neb., 88; *Bayha v. Webster County*, 18 Neb., 132; *Taylor v. Kearney County*, 35 Neb., 384.)

A county treasurer is not entitled to commission upon the proceeds of bonds. (*Territory v. Cavanaugh*, 3 Dak., 325; *Sandager v. Walsh County*, 6 Dak., 31.)

The law presumes that Beyerle and Meyer knew that the effect of their signatures would be to bind them and discharge Goold and the other sureties. (*Dickerman v. Miner*, 43 Ia., 508; *Hamilton v. Hooper*, 46 Ia., 515; *United States v. O'Neill*, 19 Fed. Rep., 567; *Shipp v. Suggett*, 9 B. Mon. [Ky.], 5.)

The sureties should be held liable unless the conditional signing was known to the approving authority. (*Dair v. United States*, 16 Wall. [U. S.], 2; *Brown v. Perkins*, 4 N. W. Rep. [Mich.], 195; *Carroll County v. Ruggles*, 69 Ia., 275; *McCormick v. Bay City*, 23 Mich., 457; *Lyttle v. Cozad*, 21 W. Va., 183; *Smith v. Moberly*, 10 B. Mon. [Ky.], 266; *Deardorff v. Foresman*, 24 Ind., 481.)

Notice to a member of the county board of a conditional signing was not notice to the board. (*Paola v. Anderson County*, 16 Kan., 302; *Miller v. Supervisors*, 25 Cal., 93; *Missoula County v. McCormick*, 5 Pac. Rep. [Mont.], 287; *Freichler v. Berks County*, 2 Grant's Cas. [Pa.], 445; *Merrill v. Berkshire*, 11 Pick. [Mass.], 269; *Bouton v. Supervisors McDonough County*, 84 Ill., 384; *County Commissioners v. Hamlin*, 31 Kan., 105.)

There was a sufficient consideration for the second bond. (*Gilbert v. Board of Education*, 45 Kan., 31.)

If the defalcation took place prior to the giving of the second bond, it was incumbent upon the sureties to show that the default actually occurred before they became sureties. (*Heppe v. Johnson*, 73 Cal., 265; *Bruce v. United States*, 17 How. [U. S.], 437; *United States v. Earhart*, 4 Saw. [U. S. C. C.], 245.)

The books of the treasurer introduced in evidence show that on the day his term of office expired he was charged with the amount he should have turned over to his successor. Under this state of facts the burden of proving the contrary is upon the sureties. (*Bruce v. United States*, 58 U. S., 437; *United States v. Stone*, 106 U. S., 525; *United States v. Eckford*, 42 U. S., 250.)

The liability of the sureties dates from the time the treasurer surrendered his office to his successor. (*Commissioners v. McCormick*, 4 Mont., 115.)

The sureties on both bonds were properly joined in one action and jointly held. (*Holeran v. School District*, 10 Neb., 406; *Powell v. Powell*, 48 Cal., 234; *Gilbert v. Board of Education*, 45 Kan., 31.)

HARRISON, J.

At the general election held in Keith county, November 8, 1887, Samuel A. Stoner was elected to the office of treasurer for the term commencing January, 1888, and terminating January, 1890. He presented to the county commissioners his official bond, signed by himself as principal and by H. L. McWilliams, H. L. Goold, J. M. Houghton, W. H. Wood, and O. T. Carlson as sureties, which was duly approved, and the officer elected took possession of and assumed the duties of the office. On this bond there appears the following:

"Signed as additional surety, Sept. 11, 1888.

"GEORGE BEYERLE.

"T. A. MEYERS."

On November 8, 1889, there was executed and approved another bond, which, in addition to the usual recitations and conditions, contained the following statement: "It is understood that this bond is given as additional security." This instrument was signed by Samuel A. Stoner as principal and H. L. Goold, J. M. Houghton, and H. Carnahan as sureties. During Stoner's term of office as county treasurer he received from the sales of

certain bonds moneys belonging to three distinct funds, and from pages of "Ledger A of Keith county, Neb.," as introduced in evidence, such pages showing the receptions and disbursements of the aforementioned moneys by Stoner as treasurer, it appeared that of them he had charged as collection fees in the aggregate the sum of $1,180 and retained it when he turned the office and moneys and other articles over to his successor. The recovery of this sum of $1,180 was the object of this action, instituted against the ex-treasurer and all parties who at any time had signed either of the bonds to which we have hereinbefore referred. A trial of the issues formed by the pleadings filed on behalf of the various parties to the suit was had, and at the close of the introduction of the testimony the presiding judge instructed the jury which had been impaneled to try the cause to return a verdict in favor of the county and against Samuel A. Stoner, H. L. Goold, J. M. Houghton, George Beyerle, T. A. Meyers, and H. Carnahan, of defendants, for the full amount claimed in the petition, which the jury accordingly did, and, after motions for a new trial were heard and overruled, judgment was rendered on the verdict, to reverse which the parties whose interests were adversely affected have prosecuted an error proceeding to this court.

The first question discussed by counsel for plaintiffs in error is, Does the evidence disclose any amount due from Stoner to the county? In his answer Stoner admitted the reception of the money as alleged in the petition, the county introduced the pages of the ledger which it was testified was the only book in which any entries were made in regard to these funds, and there was sufficient other testimony to establish that the entries were the accounts of the receipts of the funds by Stoner and their disbursements, and on each page there was an entry showing a sum charged as collection fee. This entry one witness, who stated he was acquainted with the handwriting of Stoner, testified was, in his opinion, made

by Stoner. This particular entry on one of two of the pages of the ledger was under date January 9, 1890, and on the other page January 8, 1890, and each page also shows a balance of the fund of which it contains the account, paid to Stoner's successor in office. January 9, 1890, it appears, was the date that Stoner's term of office. expired. Suffice it to say that sufficient facts were proved to show that Stoner received these funds, disbursed a portion of each, and retained from each a sum stated in the account as a collection fee. Was the treasurer entitled to any collection fees from the proceeds of the bonds? It is not claimed that he had anything to do with the sales of the bonds. It is said, however, in the argument, although it does not appear from the evidence, that Stoner expended this money during and in forwarding the issuance and registration of the bonds from the sale of which the funds were derived. There was no testimony that he had expended any sums for such purposes, and, as we have said, the testimony did disclose that the charges were for collection fees, and not for expenses of any nature or description.

Section 20, chapter 28, Compiled Statutes, 1889, in relation to fees, provides as follows: "Each county treasurer shall receive for his services the following fees: On all moneys collected by him for each fiscal year, under three thousand dollars, ten per cent. For all sums over three thousand dollars and under five thousand dollars, four per cent. On all sums over five thousand dollars, two per cent. On all sums collected, percentage shall be allowed but once; and in computing the amount collected, for the purpose of charging percentage, all sums, from whatever fund derived, shall be included together, except the school fund. For going to the seat of government to settle with the state treasurer, and returning therefrom, a traveling fee of ten cents per mile, to be paid out of the state treasury. For advertising and selling lands for delinquent tax, an additional fee of five per cent, to be collected only in case such lands are actually

sold, and then in cash of the person buying the same; but for all other cases and services the treasurer shall be paid in the same *pro rata* from the respective funds collected by him, whether the same be in money, state, or county warrants. On school moneys by him collected he shall receive a commission of but one per cent. And in all cases where persons outside of the state apply to the treasurer by letter to pay taxes, the treasurer is authorized to charge a fee of one dollar for each tax receipt by him sent to such person." In determining the meaning to be given to certain of the controlling words of the foregoing section of the statutes it was said, in the syllabus of the opinion in the case of *Taylor v. Kearney County*, 35 Neb., 381: "The words 'on all moneys collected by him' [the county treasurer] refer solely to such taxes as he has collected from the taxpayers;" and it has been stated by this court that "a public officer must discharge all the duties pertaining to his office for the compensation allowed by law, and will not be allowed compensation for extra work unless it is authorized by statute." (*State v. Silver*, 9 Neb., 88; *Bayha v. County of Webster*, 18 Neb., 131.) The money for which it was shown collection fees were charged by the treasurer were not of taxes collected of the taxpayers, nor do we find any existing statutory authority for such charges. The county treasurer, in this particular instance Stoner, was not entitled to commissions or collection fees on the proceeds of the bonds delivered to him as such officer. (*Territory v. Cavanaugh*, 3 Dak., 325; *Sandager v. Walsh County*, 6 Dak., 31.)

Counsel for plaintiffs in error further urge in this connection that the county did not show or introduce any evidence to the effect that Stoner had received all the fees to which he was entitled by law and his services rendered as county treasurer; that before it could recover it must have shown that there was nothing remaining his due as fees. This position is not tenable. The funds in question were for specific purposes, and—as to two portions of the funds at least—could not be diverted by the

treasurer from such purposes, or appropriated by him to make payments on amounts of indebtedness due to parties from the county from others of its funds, or in payment of his fees for collecting the ordinary revenues of the county; and further, Stoner's answer, to the extent it applied to retaining the amount which the county sought to recover, was a general denial. As we have said before, there was an admission that the moneys were received. Then the county introduced as to each of the particular funds an account of the disbursements of the money belonging to it, which showed that the treasurer had retained two per cent of the amount of proceeds of bonds paid to him, charging the same in the account as "collection fees," and that, on demand, he refused to pay the sums indicated to his successor. Under the issues this was sufficient without the county producing the further proof that the treasurer had received all his fees for collecting taxes. If there was any sum due him from the county which could in any manner be available in his behalf as a set-off or counter-claim against the demand of the county, or if he had allowed such a sum of his regular fees to which the law entitled him to remain in and of the funds of the county, paid by him to his successor in office as a payment of the amount which by the accounts in the ledger was due the county, either constituted matter of defense and should have been pleaded and proved, neither of which was done or attempted.

The bond which was furnished by Stoner at the time he took possession of the office, and which we will hereinafter refer to as the first bond, had been signed, at the time of its approval, by H. L. McWilliams, H. L. Goold, J. M. Houghton, W. H. Wood, and O. T. Carlson as sureties, long after its approval by the county board had written upon it as of the date stated in the writing, "Signed as additional security," and immediately under this appeared the signatures, then attached, of George Beyerle and T. A. Meyers. This, it is claimed, was a material alteration of the instrument, that it was made

without the consent or knowledge of the sureties, and rendered it void as to the sureties who signed it at its inception, and a number of authorities are cited in support of the doctrine that a material change in a contract, without the consent of a surety thereon, will discharge the surety. This is conceded by the counsel for the county, and that the alteration of the first bond in the manner we have set forth avoided it as to the sureties who signed it before its approval; hence we need not dwell further upon this point.

It is contended that Beyerle and Meyers, who signed the first bond on September 11, 1888, as additional surety, were not bound, for the reason they each signed with the understanding, or at least they had been informed, that the original signers of the instrument as sureties had consented to its being signed by Beyerle and Meyers, at the time, in the manner, and for the purpose they did sign. That they signed with the intention and expectation of becoming co-sureties of the prior signers of the bond in such capacity; that inasmuch as the prior signers did not consent to the signing and alteration, and such act avoided the instrument as to them, it ceased to be the contract which Beyerle and Meyers had agreed to sign and join in, and hence they were not bound by their signatures. There was no evidence to show that the prior sureties on the bond had any knowledge of the acts of the subsequent signers or their intentions, or that any consent was given; nor was it shown that either of the signers of date September 11, 1888, was informed that the original sureties had any knowledge of the intended subsequent additional signatures to be placed on the bond, or gave any consent thereto. The county did no act which resulted or could result to the injury of Beyerle and Meyers. There was no erasure of a name or names from the bond, no one was in any manner released before the bond was signed by them on September 11, 1888. It was their act of signing which effected the release of the prior sureties. Under the circumstances shown in evi-

23

dence, these after-signers of the instrument must be presumed to have understood and known what effect their signing would have, including the discharge of the other sureties, and it must be held that no good reasons have been given why they should not be bound to the fulfillment of the obligations of the bond.

We will now turn our attention to the second bond given by Stoner, of date November 8, 1889. It is claimed for plaintiffs in error that this second bond was given under an agreement between the sureties whose names appear thereon and one of the county commissioners, that one McWilliams, who was then away from home, should sign it as soon as he returned, and that it was not to be delivered or presented for approval until he had signed it; in other words, that their signing was conditional, and the condition was not performed; that at the time of the approval of the bond one of the board had knowledge of the condition and its non-fulfillment, and that his knowledge was notice to the board of the facts. There could be no agreement or contract between one of the board of commissioners and other persons which would bind the county, unless the commissioner acted for, and under authority of, the board. (*Treichler v. Berks County*, 2 Grant's Cas. [Pa.], 445; *Merrill v. Berkshire*, 11 Pick. [Mass.], 269.) It appears from the testimony that this second bond, when it was presented to the board, was not in any manner irregular, or in such condition as to put the board upon inquiry. The names of the sureties who had signed it appeared in the body of the bond, and none others. Unless the board had notice of the condition, if any existed, modifying or affecting its signing, if presented to and approved by the board the sureties would be bound and liable for any default of the principal in its obligations.

Was the knowledge of one of the commissioners the knowledge of the board, or notice to it? In approving bonds the board acts as a body. The approval is not the act of a member or individual members, or as persons,

but is the act of the board as a body. "The official bonds of all county, precinct, and township officers shall be approved by the county board." (Compiled Statutes, ch. 10, sec. 7.) There are some exceptions made in a further portion of the section, but the treasurer's bond comes under the part above quoted. Approval of bonds is a duty of the board and must be performed as a board when in session. (*County of Missoula v. McCormick*, 5 Pac. Rep. [Mont.], 287.) The powers of a county are vested in a board of commissioners as a corporate entity, and not in the commissioners separately and as individual officers. (*Paola & F. R. Co. v. Commissioners of Anderson County*, 16 Kan., 302.) The knowledge of the chairman of the board was not the knowledge of the board, and did not bind it. (*Commissioners of Leavenworth County v. Hamlin*, 31 Kan., 105.) The knowledge, if any—for it was a disputed fact—of one member of a county board of a conditional signing by the sureties of the second bond, not shown to have been imparted to the board, was not the knowledge of the board, nor was it notice of the fact to the board as a body, nor did it bind the county and operate the release of the sureties if the condition was not performed.

It is urged that there was no consideration for giving this second bond. In section 21, chapter 10, Compiled Statutes, provision is made for requiring and receiving additional bond of a county treasurer. The evidence shows that the conditions contemplated in the foregoing section existed in the affairs of the county of Keith, and that the treasurer furnished the additional bond. There was no more lack of consideration for the execution of the second bond than the first. The consideration was sufficient.

It is complained that the trial judge erred in not allowing the plaintiffs in error to show that it was agreed and understood, at least between the signers of the second bond as sureties and one member of the board, that the second bond was given for the one purpose of securing

the treasurer's faithful performance of his duties in regard to but one fund, known as the "Ogallala Precinct Fund," the proceeds of the sale of some bonds, $35,000, which the treasurer, according to the charge in the ledger, received on November 7, 1889,—the day previous to that on which the bond in question was signed and approved. The bond, in its terms, as printed and written, was not ambiguous, and needed no evidence to explain it; hence none was receivable, and the trial judge did not err in rejecting it. The bond contained the contract of the parties and it could not be varied or changed by evidence of a different parol agreement.

It is further claimed that the shortages, if any were shown, existed prior to the time the second bond was given, and the parties who signed it cannot be held to their payment. The testimony shows that the treasurer received the proceeds of these bonds and of the moneys he failed and refused to turn over, in the aggregate, the sum of $1,180 thereof. The page of the book introduced in evidence showed that at the date which closed his term of office the amounts which made the above stated sum were charges against the treasurer of moneys which should have been turned over to his successor. So much being shown, it devolved upon the opposite parties to prove the contrary. It was the duty of the treasurer to turn over to his successor all moneys in his hands belonging to the county, or for which he was liable to account. In the absence of proof as to when it was misappropriated, the presumption must be that it was at the end of the term and the liability would accrue at such time. (*Heppe v. Johnson*, 73 Cal., 265; *United States v. Stone*, 106 U. S., 525.)

It is further claimed that there was misjoinder of parties; that the sureties on the first bond should not have been joined in an action with those who signed the second. Under the view that the default of the treasurer occurred after the execution of the second bond, the sureties on both bonds were properly joined as parties

defendants. They were each and all liable for the failure of the principal to faithfully perform the duties of his office. (*Holeran v. School District*, 10 Neb., 406; *Powell v. Powell*, 48 Cal., 234; *Gilbert v. Board of Education*, 45 Kan., 31.)

The uncontroverted testimony in the case warranted the presiding judge in instructing the jury to return a verdict for the county and against the parties stated in the instruction. The judgment of the district court was right and is

AFFIRMED.