STATE, EX REL. LUTHER P. LUDDEN, APPELLEE, v. SILAS R. BARTON, AUDITOR, APPELLANT.

FILED FEBRUARY 28, 1911. No. 16,821.

**Schools:** NORMAL SCHOOL BOARD: COMPENSATION OF SECRETARY. Evidence of a contemporaneous and long-continued construction by the executive, legal and legislative departments of the state of sections 2, 3 and 5, subd. XIII, ch. 78, laws 1881, allowing

compensation to be paid to the secretary of the board of educa-
tion of the state normal schools for his services as such, together
with an appropriation by the legislature for that purpose, with
the full knowledge of the fact that a member of the board was
holding the office of secretary, *held* sufficient to authorize the
auditor to approve such a claim and draw a warrant for its pay-
ment.

APPEAL from the district court for Lancaster county:
ALBERT J. CORNISH, JUDGE.  *Affirmed.*

*Arthur F. Mullen, Attorney General,* for appellant.

*T. J. Doyle* and *G. L. De Lacy, contra.*

BARNES, J.

This proceeding in mandamus was commenced in the
district court for Lancaster county to compel the auditor
of public accounts to approve a voucher for the compen-
sation of, and expenses incurred by, the relator from
April 1, 1909, to Nov. 1, 1909, as secretary of the board
of education in control of the state normal schools, and
to issue a warrant for the payment of the same.  The
relator is a member of the board of education of the state
normal schools, and the duly elected secretary of that
board.

The petition, in substance, alleges that by reason of the
establishment of several normal schools in this state, and
the large enrolment therein, and on account of the largely
increased appropriations thus made necessary, amounting
to over $400,000, and for other reasons, it has become
necessary for the secretary of the board of education to
perform a large amount of labor of a clerical and account-
ing nature, which has been performed by the relator under
the rules of the board; that, in payment for his services
so rendered, the board of education allowed him at the
rate of $25 a month, and the expenses incurred by him in
performing his clerical duties; that there is due him there-
for the sum of $175, and that there is an unexpended leg-

**40**

islative appropriation made for that purpose upon which the warrant may be drawn. The answer denies the authority of the board of education to allow any compensation to the secretary, and denies that any appropriation has been made to pay for such services. The court found in favor of the relator, and ordered a peremptory writ to issue, from which judgment the respondent has appealed.

The evidence shows that the establishment of the normal school at Kearney, together with the largely increased attendance at the Peru school, has vastly increased the volume of business required to be transacted by the board in order to keep a proper control, regulation and inspection of the financial affairs of these institutions. The appropriations made by the legislature for the biennium amount to more than $400,000. These appropriations are paid out under the direction of the board, and the vouchers are prepared and inspected by its secretary. In addition to the bookkeeping required to take care of these large expenditures, both schools have a number of other funds derived from deposits made and fees paid by the students, disbursements from which are made by and under the direction of the presidents of the respective schools. In each of these funds an account is kept with the individual student. Triplicate receipts are prepared; one given to the paying student, one retained at the school, and one sent to the secretary with a monthly report. These monthly reports with vouchers attached are checked over and verified in the secretary's office. The relator testifies that in order to do this an adding machine is used, and that he also procured the assistance of clerks and stenographers, who were paid by him from his personal funds. This system was devised and put in operation by the board of education some four or five years ago as a check upon the cash funds of the different institutions, and we have no doubt that it tends to a careful and efficient administration of their affairs. It is also shown that a large correspondence is conducted by the secretary, and he testifies that he has made no charge for keeping the minutes or for

duties imposed by the statute as a part of his official
duties.   It also appears that no office was furnished re-
lator by the board, and he was compelled to use rooms in
his own house in which to have this work performed; that
the adding machine belonged to the state, but the type-
writers used were his individual property.   There is testi-
mony by another member of the board that the amount
represented by the voucher, in his opinion, was less than
the necessary and required work would have cost if it had
been done by others.

From the evidence in the case, we are thoroughly con-
vinced that the work has been well performed by the re-
lator and his assistants; that it was necessary, and has
saved the state much more than the amount of the relator's
claim.   The respondent has not attempted to controvert
the foregoing facts, but takes the position that the pay-
ment of the relator's claim is expressly prohibited by the
provisions of sections 2, 3 and 5, subd. XIII, ch. 78, laws
188⁻   ˙ ɐn. St. 1909, secs. 11721, 11722, 11724) which read
aˤ  ɹ₁ows: "Section 2. The members of the board of edu-
ɹ₁on shall annually elect a president and a secretary
ᵣ₁om among their own number, and the state treasurer
shall be the treasurer of the board by virtue of his office.
Section 3. It shall be the duty of the secretary to keep an
exact and detailed account of the doings of the board, and
on the first day of January of each year he shall transmit
to the governor a report of all expenditures made during
the preceding years, vouchers for which shall be kept on
file in the office of the secretary and open to the inspection
of the governor, auditor, and members of the legislature.
Section 5. The board of education shall receive no compen-
sation for their services, but shall be reimbursed actual
expenses incurred in attending upon meetings of the
board."

It is argued that the statute directly prohibits the board
from receiving any compensation, and therefore it is ap-
parent that no right exists in the relator to the compen-
sation in question.   On the other hand, it is contended

that, although the board is prohibited from receiving any compensation, still there is no prohibition against the payment of compensation to its secretary, and since the claim filed by the relator is for services performed by him, not as a member of the board, but as its secretary, he is entitled to have it allowed.

In *Territory v. Norris,* 1 Or. 107, the board of commissioners, selected to control the construction of the state penitentiary, appointed one of its members to act as secretary, and paid him $250 therefor. A suit was brought to recover the money back. The territorial supreme court held that the board had authority to employ a secretary; that the duties of the members of the board and its secretary are distinct, but not incompatible, and can be performed by the same person, and, if a member of the board had been selected and had served, he had a right to his reasonable compensation. In this state, while the law requires the board to elect one of its members as its secretary, still the duties of the board and the secretary are separate and distinct. He acts in a dual capacity while serving as a member of the board and in the performance of his duties as its secretary. He is not entitled to any compensation for performing his duties as a member of the board; but, while performing the distinct, different and separate duties which devolve upon the secretary of the board, he is not acting, strictly speaking, as a member of that body. He is simply its agent or servant, and the law nowhere expressly provides that the secretary shall receive no compensation for the performance of his duties. It therefore seems clear that the prohibition invoked by the respondent, if it exists at all, arises by implication or by a construction of the provisions of the sections of the statutes above quoted. To aid us in construing those provisions, we have the contemporaneous construction adopted by the legislature, the auditing department of the state, the governor, the legal department, and of the board itself, which has continued without interruption to the present time. It appears from the public records, of which

we may take judicial notice, that when the state normal
school at Peru was established, and the board of educa-
tion created by the act of June 20, 1867 (Gen. St. 1873,
ch. 48, sec. 12) provision was made to pay for the services
of the board at a specified rate per day, as well as to pay
its expenses. In 1881 this provision for compensation was
repealed, and the law in force was enacted. Prior to that
time, and for each of the two preceding bienniums, the
legislature had appropriated the sum of $600 to pay the
expenses and *per diem* of the board of education, and,
although that compensation was abolished by the act of
1881, it was understood that the necessary expenses of the
board, including compensation for its secretary, must be
met, and therefore the legislature immediately thereafter,
and at the same session, increased the appropriation for
that purpose to $800, and at the following session that
amount was further increased to $1,000. The legislature
at the 1893, 1895, 1897, 1899, 1901,. and 1903 sessions ap-
propriated $800 per biennium for that purpose. In 1903
provision was made for the construction of a state normal
school at Kearney. In 1905 two schools were in opera-
tion, one at Peru, the other at Kearney, and an $800 item
appears for expense of the board in the paragraph devoted
to the Kearney normal school in the general appropriation
bill, and a like sum in the paragraph which refers to the
Peru normal. In 1907 and 1909 separate appropriations
were made for the expenses of the state normal board;
$1,900 being appropriated in 1907, and $2,000 in 1909.

Pursuing another line of investigation, the vouchers
filed in the office of the state auditor since the change in
the law in 1881 show that in each of the years 1881, 1883,
1885 and 1886 an allowance of about $50 was made to
the secretary of the board for salary. No further claims
for salary, as such, were filed until 1897, but the com-
pensation of the secretary was paid under designations,
such as expenses, etc. After the year 1897, and until
December, 1904, salary claims of the secretary at the
rate of $50 a year were filed and allowed. No claim for

salary was filed from December, 1904, until October, 1906, because the secretary, during those years, was the state superintendent of public instruction, who is prohibited by the constitution from receiving any compensation, other than that provided thereby, for any purpose whatsoever. In 1906 the present secretary was elected, and thereafter filed a claim, which was allowed, for clerical work for the board. From that time until the present claims have been filed by the relator and audited and allowed for "services as secy.," "clerical services," "use of typewriter," "office service," etc. There is also testimony that, when the legislature of 1909 was considering the matter of appropriations, the relator went before that body and gave it a full statement of the items and amounts necessary to conduct the business of the board, including compensation for its secretary, as claimed.

In view of the foregoing, we are of opinion that the contemporaneous and long-continued construction of the statute by the officers of the state so as to warrant the allowance and payment of compensation to the secretary of the board, and which has been concurred in by the legislature, should be adopted by the court as the meaning of the present law. In this connection it is proper to say that there seems to be no attempt on the part of the relator to obtain more than a fair equivalent for the services rendered, and not the slightest evidence of any moral turpitude. It is evident that the work which was light and trifling in amount in 1881, when the statute in question was enacted, has grown with the growth of the state, and that the law should have long ago been amended so as to provide a specific salary for the increased work which the secretary of the state board' of education is required to perform. It seems, however, that the legislature has seen fit to adopt a different course and make sufficient and specific appropriations for the payment of a reasonable compensation to the secretary at each of its biennial sessions, and we are of opinion that those appropriations constitute sufficient authority for

the payment of the relator's claim, and are as effective
for that purpose, while continued, as a general law upon
that subject.   By this we do not abandon the rule that a
public officer must perform all of his official duties for
the compensation provided by law.   Indeed, it may be
said that the relator's compensation as fixed and allowed
by the board and approved by the legislative appropria-
tion is his compensation as provided by law, and there-
fore this case is within that rule.

For the foregoing reasons, the judgment of the district
court is

AFFIRMED.

REESE, C. J., dissenting.

I entertain no doubt of the justice of relator's claim,
and that he ought, in fairness, to be paid the small com-
pensation allowed him by the board.   Neither do I doubt
the power of the legislature to provide for its payment
by a proper appropriation.   Indeed, I believe it to be the
duty of that body to do so.   But the question with me is:
Has it set aside any portion of the public money for that
specific purpose?   It is provided in section 22, art. III of
the constitution: "No money shall be drawn from the treas-
ury except in pursuance of a specific appropriation made
by law."   In *State v. Wallichs,* 12 Neb. 407, Judge LAKE,
in writing the opinion of the court upon this clause, says:
"In construing this provision of the constitution, the rule
that the words are to be given their usual, ordinary mean-
ing must not be disregarded. . By this rule the term
'specific appropriation' means a particular, a definite, a
limited, a precise appropriation."   This language is quoted
with approval in *State v. Wallichs,* 16 Neb. 679, and it is
also held in *State v. Wallichs,* 15 Neb. 609, that "there
can be no implied appropriation of money by the legisla-
ture.   The auditor has no authority to draw a warrant
upon the treasury except in pursuance of a specific appro-
priation."   This, I think, has been the uniform holding
of this court.   I cannot believe that a "specific appropria-
tion" has been made to pay this claim, however just it
may be.

LETTON, J., dissenting.

While I agree with what is said in the opinion with respect to the value of the services rendered by the relator, I must dissent from the conclusion that a plain disregard by an officer of the state of the provisions of a statute, if continued for a long period of time, may make that lawful which by express terms is prohibited, and thus defeat the legislative purpose. Neither can I agree that where the members of a board are expressly prohibited from receiving compensation as such members, and the secretary is required by the statute to be a member of the board, the statute may be evaded by providing a salary for the secretary.

It is a well-established principle of law that an officer is not entitled to compensation except where the same is allowed or awarded him by a constitution or a statute, that the compensation allowed by law for duties performed in an official capacity are paid in full of all official services, and that he is not entitled to receive any additional or further compensation for services pertaining to his office. Mechem, Public Officers, secs. 855, 856; Throop, Public Officers, secs. 446, 477, 478.

This has been the rule in this state ever since the question first came before this court. *State v. Silver,* 9 Neb. 85; *Bayha v. Webster County,* 18 Neb. 131; *Stoner v. Keith County,* 48 Neb. 279. Judge SULLIVAN says in the opinion in *State v. Meserve,* 58 Neb. 451: "A public officer must perform every service required of him by law, and he must look to the statute for his compensation. If it provides none, then the services are gratuitous. *State v. Silver,* 9 Neb. 85; *Bayha v. Webster County,* 18 Neb. 131; *Adams County v. Hunter,* 78 Ia. 328; *City of Decatur v. Vermillion,* 77 Ill. 315; *Troup v. Morgan County,* 109 Ala. 162; *Sampson v. Rochester,* 60 N. H. 477. A person accepting a public office takes it with its burdens, and whenever those become insufferably oppressive he may resort to that excellent and adequate remedy which a wise

legislative foresight has provided, viz., a letter of resignation addressed to the proper authority." *State v. Eskew,* 64 Neb. 600; *O'Shea v. Kavanaugh,* 65 Neb. 639; *Nuckolls County v. Peebler,* 65 Neb. 356; *Red Willow County v. Smith,* 67 Neb. 213; *Power v. Douglas County,* 75 Neb. 734.

Under the statute, the secretary of the board is a public officer, and even without the express prohibition against members of the board receiving compensation, there being no fee or compensation provided by law for his services as such officer, he is not entitled to any compensation therefor. This can certainly be no less so when the payment of any compensation to a member of the board is directly prohibited. In *Moore v. Independent District,* 55 Ia. 654, the facts were that a school board, whom the statute prohibited from receiving any compensation, employed one of their own members to superintend the construction of a schoolhouse, and the action was brought to recover on a school order given him for such services. The court held that, the work being a part of the duty of the board of which he was a member, the plaintiff could not recover. See, also, to the same effect, *Weitz v. Independent District,* 87 Ia. 81.

It may be said, also, that, if the board can employ each member to render extra services, such a construction of the statute might become dangerous under other circumstances and with less careful and prudent officers. It is true that an officer may perform services foreign and in nowise appertaining to or interfering with his official duties, and may receive compensation therefor (*Cornell v. Irvine,* 56 Neb. 657); but it is clearly pointed out by the supreme court of the United States (*Converse v. United States,* 21 How. (U. S.) 463; *United States v. Brindle,* 110 U. S. 688) that the test in such cases is whether the duties of the one occupation or office are so diverse and different from those of the other that they cannot possibly fall under the same head.

As to the claim of contemporaneous construction, I am

unable to take the view that the facts in this case bring
it within the purview of this doctrine.   When in 1881 the
legislature repealed the law which allowed compensation
to the members of the board and prohibited such payments
in the future, this was a clear and unmistakable mani-
festation of the legislative will.   It rendered the former
practice unlawful, and no department or officer of the
state government was at liberty to set it aside by con-
struction.   *State v. Cornell,* 60 Neb. 276.   In Illinois the
state treasurers had for nearly 40 years retained certain
fees, properly belonging to the state, under their con-
struction of a statute, but the supreme court of that state
held that the statute was plain and unambiguous and
hence there was no room for construction.   *Whittemore
v. People,* 227 Ill. 453.   In 2 Sutherland (Lewis) Stat-
utory Construction (2d ed.) sec. 473, it is said: "Long
usage is of no avail against a plain statute; it can be bind-
ing only as the interpreter of a doubtful law and as afford-
ing a contemporary exposition."   In section 474 we find
the following:   "If the meaning of a statute is clear and
unambiguous, a practical construction inconsistent with
that meaning will have no weight and will not be fol-
lowed.   A practical construction will not be followed
when it would defeat the obvious purpose of the statute."
Of course, if the evidence showed that an appropriation
was made to pay a salary to the secretary, this would
authorize the payment, being the last word of the law-
maker.   It was evidently the object and purpose of the
legislature in changing the law to constitute the position
of member of the board one of dignity and honor, so that
a person accepting it would do so, not for financial gain,
but from a laudable, unselfish and patriotic desire to ren-
der valuable services to the state and to the cause of
education.   The statute is plain and unambiguous, and
consequently the doctrine of contemporaneous construc-
tion is not applicable.

SEDGWICK, J., concurs in this dissent.