INDEPENDENT SCHOOL DISTRICT NO. 37, SWIFT COUNTY, v. HENRY C. HACKMAN AND ANOTHER.[1]

July 26, 1929.

No. 27,377.

[1]Reported in 226 N. W. 514.

200

*F. E. Wright* and *C. A. Fosnes,* for appellant.
*John I. Davis* and *Stevens, Stevens & Maag,* for respondents.

WILSON, C. J.

Plaintiff appealed from an order denying its motion for a new trial.

Defendant surety company signed defendant Hackman's bond which he gave plaintiff while treasurer of plaintiff.

One Daby was Hackman's predecessor as treasurer. On October 2, 1926, Daby passed out of office and Hackman stepped in. The latter received from the former the check book and other books and papers which belonged to the treasurer's office. The books then correctly showed cash in the local bank in the sum of $9,445.68. For this amount Daby gave Hackman a check on the bank. Hackman received and indorsed the check. He presented it to the bank, in the presence of Daby, for deposit. The banker told him that was not necessary since that "is simply a memorandum between you and Mr. Daby as to the amount of money that there is in the bank on deposit for the district." Thereupon, the check being handed back to Daby, the banker crossed out the name Daby on the bank books and wrote in the name of Hackman. Thereafter Hackman, as treasurer, drew checks upon the account in the bank aggregating $2,919.44 which the bank paid and charged to the account. Thereafter and on November 20, 1926, the bank closed, with this account showing a balance of $6,526.24 for which the treasurer has not accounted. This action is to recover the amount.

Defendants claim that Hackman never received the money. When the names were changed upon the bank's books and the check given back to Daby all the parties understood the funds had been transferred from Daby to Hackman. They so intended. They acted on that theory. It cannot be claimed that Hackman checked

out $2,919.44 which was not in his possession. Nor can it be said that the transfer was effectuated only by his checking money out and that the transfer was ineffectual as to the money not checked out.

The informal transfer was sufficient to pass title from Daby to Hackman. Watson v. Goldstein, 176 Minn. 18, 222 N. W. 509. Hackman accepted it as money. That was neither strange nor unusual. It was the credit of the bank which in daily business is passed in the form of drafts and other commercial paper. Except as to the extent checked out, Hackman was content to leave the money in the bank. This transaction was in substance the same as if Daby had given Hackman cash and he had deposited it in the bank.

■ But the claim is that, granting in substance what we have said, Hackman accepted such transfer under the belief that the account in the bank represented money in the amount thereof but it subsequently developed that it did not and that he did not receive the money for the reason that the bank did not have enough cash on hand in the bank at any one time to have paid the check given him by Daby had it been presented and payment demanded. The trial court so found. But what are the facts from which such a conclusion is drawn? The largest amount of cash on hand on any day between October and November 20 was $3,782.42. Commercial deposits during this period varied from $69,799.30 to $81,304.47. But cash and reserve in correspondent banks on any day during this period was more than enough to pay the school account in full. This ran from about $10,000 to $12,000. On October 2 it was $10,195.82. The bank also had an arrangement with a Minneapolis bank for credit to the extent of $25,000 on which it could draw at any time. Could this account not have been paid on October 2 when Hackman accepted the account as money? We think the record compels an affirmative answer. The banking business rests largely on a system of credit. Few banks when solvent could pay each depositor the cash if all made a demand at the same time. If otherwise the bank could not loan its money but would have to hold it to pay the depositor. This would so reduce the

bank's income as to put it out of business. That is not banking. Nor is it what the public expects or wishes. Cash is retained in a sufficient amount for the transaction of business. The minimum amount of such cash is fixed by law as a reserve requirement. The amount of cash on hand might be a very poor criterion as to solvency or insolvency. We believe the trial court applied an erroneous theory in holding that Hackman did not receive the money—that not depending upon the amount of cash in the bank's vault. Board of Education v. Robinson, 81 Minn. 305, 84 N. W. 105, 83 A. S. R. 374; Montgomery County v. Cochran (C. C. A.) 126 F. 456. See 52 A. L. R. 994, Anno.

Respondents base their hopes upon Board of Education v. Robinson, 81 Minn. 305, 84 N. W. 105, 83 A. S. R. 374. But therein the rule is announced, under somewhat similar circumstances, that if the bank was insolvent, had no funds, and could not and would not have paid the check had demand been made therefor, it could not be said that the holder of the check which had been deposited had received the money. In that case Robinson, the treasurer, had received a check from the county that he deposited in a bank which soon closed. The facts in the Robinson case were insufficient to make applicable the rule of law stated. Nor are the facts here sufficient. In the instant case funds were available, though not in the bank's vault, and the evidence shows that the check would have been paid had it been presented and payment demanded.

■ The school treasurer is liable for all he receives. School Dist. No. 1 v. Aiton, 173 Minn. 428, 217 N. W. 496, and cases cited.

The order is reversed with directions to amend the findings in accordance with the views herein stated and to enter judgment for plaintiff.

Reversed.