MASSACHUSETTS BONDING AND INSURANCE COM-
PANY *v.* FLOYD COUNTY *et al.*

596

No. 9795.   FEBRUARY 24, 1934.   ADHERED TO ON REHEARING, MARCH 3, 1934.

*Jones, Evins, Powers & Jones,* for plaintiff.

*Wright & Covington,* for defendants.

BECK, P. J.   The Board of Commissioners of Roads and Revenues of Floyd County issued an execution against W. W. Phillips, former treasurer, and the Massachusetts Bonding and Insurance

Company (hereinafter referred to as the bonding company), as surety on his bond, in the principal sum of $21,569.74, besides interest at 20 per cent. per annum, and $2000 as attorney's fees. The bonding company filed its petition to restrain the enforcement of the fi. fa., on the grounds that the sections of the Code under which it was issued were unconstitutional, and that the indebtedness of treasurer Phillips to the county had been paid in full, it being alleged that at the time Phillips turned over the office to his successor, Hugh McCrary, he delivered to McCrary a check on the Citizens-Floyd Bank & Trust Company, of Rome, for $36,217.28, and that this check was accepted by McCrary, who deposited it to his account, received credit therefor on the books of the bank, and checked against it from time to time thereafter.

The court overruled demurrers to the petition, heard evidence on the allegations with reference to payment, and entered an interlocutory order restraining the enforcement of the fi. fa. On writ of error this court affirmed the interlocutory decree, but did not pass upon the constitutional question involved, holding that that question was not made in the record and was not necessary to a decision. *Board of Commissioners* v. *Massachusetts Bonding &c. Co.*, 175 *Ga.* 584 (165 S. E. 828). The court did, however, hold that the allegations of the petition, which were supported by the evidence, set out at least a partial defense to the fi. fa. Thereafter the bonding company so amended its petition as to raise the question of the constitutionality of section 585 of the Civil Code; and Floyd County filed an answer and cross-bill praying for judgment against the bonding company for $10,527.54, the amount of the fi. fa., less credits thereon, together with the further sum of 20 per cent. per annum as interest from January 26, 1931, and $2000 attorney's fees. To this the bonding company demurred on several grounds, including the contention that, no answer or other pleading having been filed by Floyd County for five terms, it was too late for it to come in, by cross-bill or otherwise, and set up the matters therein alleged; that there was nothing to amend by; that, the demurrer to plaintiff's amendment raising the question of the constitutionality of § 585 having been overruled, the issues thereby raised had been disposed of and all relief sought by the complainant had been granted, and it was too late for the county to come in by amendment or cross-petition and set up the matters contained therein.

Also, on the ground that Floyd County, if entitled to recover at all, was not entitled to recover attorney's fees. These demurrers were overruled, exceptions pendente lite were filed, and error is assigned. After trial on the issues involved, the jury returned a verdict in favor of the plaintiff as to the injunction, and in favor of Floyd County against the plaintiff the sums of $8527.54 principal, $3115.95 interest, and $1500 attorney's fees. A motion for new trial was overruled, the bonding company excepted.

■ The first headnote requires no elaboration.

■ Error is assigned upon the following parts of the court's charge: "I charge you that the sole issue for your determination in this case is the amount of cash which the bank could and would have paid upon the check in question, that is, the check for $36,000 and some odd dollars which was given by Phillips, treasurer, to Mc-Crary, treasurer, payable at the Citizens-Floyd Bank & Trust Company; that the issue as to what would be the amount of cash which the bank could and would have paid upon the check must be determined as an issue of fact from all the proved facts and circumstances, including the financial condition of the bank at the time as well as the attitude and intention of the officers in charge of the institution so far as the same may appear from the evidence; and that would be dated, gentlemen, as of October 11, 1930, the court charging you that the default, if there was a default, took place on October 11, 1930." And also: "The check may in equity be treated as the equivalent of money, but can be so treated only to the extent that payment in cash could and would have been made thereon on October 11, 1930, if demanded." And also the following: "As heretofore stated, you must find a verdict in favor of the plaintiff, finding in favor of the injunction prayed; the other question, as heretofore stated to you, being as to whether or not the bank could and would have paid this check on October 11th, 1930, if cash had been demanded." And also: "If you find that it could and would have paid the check, the total amount as of that date, then I charge you that it would be your duty to find in favor of the plaintiff in this case. On the other hand, I charge you that if you find the bank couldn't and wouldn't have paid any more upon the check than has been paid, and that there was a balance due to Floyd County as set up less a credit of $789.53, if you find that to be true. I charge you that it would be your duty to find in favor of the de-

fendant and against the plaintiff in this case the total amount sued for, $10,527.54, with interest at 20 per cent. from January 26, 1931, less the credit of $789.53 as of December 23, 1931." These instructions were excepted to upon the grounds: "(a) Under the decision of the Supreme Court in this case, and which settled the law herein, the issue was not what the bank could and would have done on October 11, 1930, the date of the deposit of said check by McCrary, but what amount in excess of the amount actually paid the bank could and would have paid at any time between October 11, 1930, and the date of the closing of the bank. (b) Because the jury in said instructions should not have been limited in its consideration to the amount the bank could and would have paid on said check on October 11, 1930, if payment in cash had been demanded, but on the contrary should have been instructed to ascertain whether the check could and would have been paid by the bank in whole either on that date or on any date between that date and the closing of the bank had payment been demanded, and if they ascertained that it could and would have been paid in whole during said period that they should return a verdict for the plaintiff, but that if they found that between those dates the bank couldn't and wouldn't have paid the check in whole they should then ascertain whether during said period the bank could and would have paid on demand any sum in addition to the amount actually paid by the bank during said period, and if so what amount, and reduce the claim of the defendant, Floyd County, by that amount. (c) Because under the law Floyd County had no right to recover in this case any sum in excess of the amount the bank could and would have paid to the new treasurer, Hugh McCrary, at any time between October 11, 1930, and the date of the closing of the bank, to wit: November 12, 1930, and the court erred in limiting the jury in its consideration of the amount that the bank could and would have paid on account of said check to October 11, 1930. (d) Because there was no evidence upon which to predicate said charge."

The charges excepted to were not erroneous for the reasons assigned. These exceptions to these charges, as well as the assignments of error in grounds 3, 5, and 9 of the motion, which relate to the admission of evidence, raise, in substance, the question as to whether the plaintiff in error was entitled to a credit for any amount or amounts which could and would have been paid by the

bank on the check at any time after it was deposited by McCrary to his account; or was that credit limited to the amount which the bank could and would have paid on the date McCrary deposited the check had cash been demanded? Counsel for both parties agree that the answer to this question turns upon a correct interpretation of the former decision of this court (175 *Ga.* 584, supra), where it was said: "It appears from the evidence that the bank was insolvent on October 10, 1930, the date when the outgoing treasurer delivered to his successor the check for $36,217.28; and yet the bank was a going concern and continued to do business for a period of more than a month thereafter. The mere fact that the bank was insolvent on the date of the delivery and acceptance of this check, and of its deposit to the credit of the new treasurer, would not establish a violation of the bond of the old treasurer as for a failure to account to his successor in office. The question is, had the insolvency of the bank progressed so far that the bank could not have paid this check in cash upon its presentation in due course by the new treasurer. If the bank could and would have paid the check in whole, then there was no default by the old treasurer; but if the bank could and would have paid the check in part, but not in whole, there was a default to the extent of the difference. To that extent there was a loss of public funds by the insolvency of the bank, and for such loss the old treasurer and his surety were responsible to the county. After the allowance of certain credits, the execution is now proceeding for the principal sum of $10,527.54. Assuming that the evidence demanded the inference that the bank could not and would not have paid the entire amount of the check in case the money had been called for, we think there was an issue of fact as to whether it could and would have paid such an amount as would have left a balance less than the principal sum now claimed in the execution. If so, the evidence shows at least a partial defense against the claim as now prosecuted by the county commissioners. The surety company is liable only for such a sum as would not have been paid on this check if the cash had been demanded by the new treasurer. In referring in this opinion to the question of whether the bank could and would have paid the check in part but not in whole, we are not to be understood as dealing with any question as to whether the new treasurer should have accepted a partial payment instead of allowing the check to be dishonored. We are

simply discussing the question of default by the old treasurer, and declaring the rule by which such default should be determined, namely, by ascertaining the value of the check upon the basis of the amount of money that could and would have been paid upon the same in case of a demand for cash." And then Mr. Justice Bell, who delivered the opinion of the court, after setting out and construing certain decisions by other courts, said: "It is plain from the foregoing decisions that where an officer, as a public treasurer, in an accounting with the authorities to whom he is responsible, or with his successor in office, delivers checks, drafts, or certificates of deposit representing public funds which he has in bank, and the same are accepted in lieu of cash, and credit therefor is transferred by the bank to the authorities or the official to whom the accounting is made, the fact that the bank may be insolvent at the time of such transaction does not necessarily show a default by the officer making such accounting, but the transaction should in equity, as in the instant equity case, be treated as a transfer of money, to the extent of the amount which the bank could and would have paid in cash, if cash had been demanded." And again it was said: "The check may in equity be treated as the equivalent of money, but can be so treated only to the extent that payment in cash could and would have been made thereon, if demanded, and the remainder, if any, as the criterion of liability."

In view of the language just quoted, it is apparent that the construction put thereon by the court below was correct; that is, that this court in the former decision was dealing with the question of the default of the outgoing county treasurer, and that that default was to be determined as of the date of his attempted settlement with his successor in office, and not at a later date; and the question for determination was whether or not a default on the part of Phillips occurred on October 11, the date on which the check was presented to the bank. And if such a default occurred at that time by reason of the inability or refusal of the bank to pay the check, subsequent acts on the part of the bank, or the condition of the bank's financial condition subsequently to that, would not relieve this default or authorize the court to hold that there was no default on that date; though of course the outgoing treasurer and his bondsman would receive credits for any amounts that were actually paid subsequently; and they did receive credit for such.

In view of that ruling, there was no error in the charges excepted to, or in the rulings on admissibility of evidence.

■ The rulings in headnotes 3, 4, and 5 require no elaboration.

■ Paragraphs 26 and 27 of the original petition in this case are as follows: (26) "Petitioner further shows that said execution against W. W. Phillips as principal and your petitioner as surety was issued and is proceeding illegally and without warrant or authority of law, for the reason that section 1187 of the Code of Georgia of 1910, as made applicable by section 585 of the Code of Georgia of 1910 to the issuance of executions against defaulting county treasurers and the sureties on their bonds, is unconstitutional and void, because it is violative of the due-process-of-law clauses of the constitution of the State of Georgia and of the constitution of the United States, in that there is no provision of law for notice to a county treasurer or the sureties on his bond, or for a hearing, before the issuance of such execution, and such execution, when issued, is a final process authorizing a levy on and sale of the property of the defendants therein, and there is no provision of law by which the execution can be converted into mesne process or by which the validity or legality thereof, either in whole or in part, can be attacked; and in that a county treasurer and the sureties on his bond are afforded no opportunity, either before or after the issuance of said execution, to be heard as to his or their liability for all or any part of the amount of said execution before their property is levied upon and sold in obedience thereto." (27) "Petitioner further alleges that even if section 1187 of the Code of Georgia of 1910, as made applicable by section 585 of the Code of Georgia of 1910 to the issuance of executions against defaulting county treasurers and the sureties on their bonds, is otherwise valid and constitutional, that portion thereof authorizing the Board of Commissioners of Roads and Revenues to include in such an execution attorney's fees is unconstitutional and void because violative of the due-process-of-law clauses of the constitution of the State of Georgia and of the United States, in that no provision is made giving to the county treasurer or the sureties on his bond an opportunity to be heard as to the amount or reasonableness of such fees, and the law does not otherwise provide for any method of attack thereon; and is further unconstitutional and void because in violation of paragraph 23 of section 1, article 1, and of paragraph one of sec-

tion 1, article 1 of the constitution of the State of Georgia, in that the determination of what attorney's fees incurred are reasonable and the assessment of such fees are judicial functions and can not be delegated to an administrative official."

To those two paragraphs the following amendment was allowed: "By striking from paragraph 26 of said petition, and lines four to seven inclusive of said paragraph, the following words: 'Section 1187 of the Code of Georgia of 1910, as made applicable by section 585 of the Code of Georgia of 1910 to the issuance of executions against defaulting county treasurers and the sureties on their bonds,' and substituting in lieu of said words so stricken the following words, to wit: 'Section 585 of the Code of Georgia of 1910, under or pursuant to which said execution was issued,' so that said paragraph as amended shall read as follows: 'Petitioner further shows that said execution against W. W. Phillips as principal and your petitioner as surety was issued and is proceeding illegally and without warrant or authority of law, for the reason that section 585 of the Code of Georgia of 1910, under or pursuant to which said execution was issued, is unconstitutional and void, because it is violative of the due process of law clauses of the constitution of the State of Georgia and of the constitution of the United States in that there is no provision of law for notice to a county treasurer or the principal on his bond, or for a hearing, before the issuance of such execution, and such execution, when issued, is a final process authorizing a levy on and sale of the property of the defendants therein, and there is no provision of law by which the execution can be converted into mesne process or by which the validity or legality thereof, either in whole or in part, can be attacked; and in that a county treasurer and the sureties on his bond are afforded no opportunity, either before or after the issuance of said execution, to be heard as to his or their liability for all or any part of the amount of said execution before their property is levied upon and sold in obedience thereto.'

"By striking from paragraph 27 of said petition the first six lines of said paragraph, and substituting in lieu thereof the following: 'Petitioner further alleges that even if section 585 of the Code of Georgia of 1910, under or pursuant to which said execution was issued, is otherwise valid and constitutional, said section, in so far as it authorizes the Board of Commissioners of Roads and Rev-

enues,' so that said paragraph as amended shall read as follows: 'Petitioner further alleges that even if section 585 of the Code of Georgia of 1910, under or pusuant to which said execution was issued, is otherwise valid and constitutional, said section, in so far as it authorizes the Board of Commissioners of Roads and Revenues to include in such an execution attorney's fees, is unconstitutional and void, because violative of the due-process-of-law clauses of the constitution of the State of Georgia and of the United States, in that no provision is made giving to the county treasurer and the sureties on his bond an opportunity to be heard as to the amount or reasonableness of such fees, and the law does not otherwise provide for any method of attack thereon; and is further unconstitutional and void because in violation of paragraph 23 of section 1, article 1, and of paragraph one of section 1, article 1, of the constitution of the State of Georgia, in that the determination of what attorney's fees incurred are reasonable and the assessment of such fees are judicial functions and can not be delegated to an administrative official.'"

The defendants filed a demurrer to the allegations of these two paragraphs, "for the reason that the same sets forth mere conclusions of the pleader, without any facts set forth justifying or substantiating the same; that the same sets forth a conclusion of law which is incorrect, in that no facts are alleged showing wherein or how or in what manner section 585 of the Code of the State of Georgia therein referred to is unconstitutional for any of the reasons therein stated, and the facts averred in said amendment do not, as a matter of law, constitute any grounds for the unconstitutionality of said statute, and by reason thereof said paragraph of said petition as amended should be stricken." The court overruled the demurrer, and this ruling was not excepted to. It therefore stands as the law of the case upon the questions made by the two paragraphs and the amendment as set forth above, and the demurrer. We are of the opinion that the effect of this ruling is to preclude the collection by the county of interest at the rate of 20 per cent. per annum, and attorney's fees, under section 1187 of the Code, if that were applicable under the provisions contained in section 585.

■ Nor was the county entitled to recover attorney's fees under section 299 of the Code, as follows: "The measure of damages upon

all official bonds for the misconduct of the officer, unless otherwise specially enacted, shall be the amount of injury actually sustained, including the reasonable expenses of the suit to the plaintiff, besides the costs of court; but in all cases when little or no damage is actually sustained, and the officer has not acted in good faith, the jury may find for the plaintiff an amount, as smart-money, which, taking all the circumstances together, shall not be excessive nor oppressive." It was not shown by the evidence that the county suffered any injury or loss because of having to pay attorney's fees in this case.

■ The evidence authorized the verdict for the principal sum found by the jury in favor of the county; but as we have held that the county was not entitled to recover attorney's fees or interest at the rate of 20 per cent., the verdict can not stand as to those two items. If the county, within twenty days from the return of the remittitur to the trial court, will strike from the verdict the attorney's fees and the amount of interest that was returned by the jury, and write into the verdict, in lieu of the amount actually returned by the jury, an amount of interest ascertained by calculating the same at the rate of 7 per cent. per annum, the verdict will then be permitted to stand and a new trial will be denied.

*Judgment affirmed on condition. All the Justices concur.*