THURSTON COUNTY, TO USE OF FRANK VESELY ET AL., APPELLANTS, V. JAMES CHMELKA ET AL., APPELLEES.

294 N. W. 857

FILED NOVEMBER 29, 1940. NO. 30880.

*Zacek & Nicholson,* for appellants.

*Ginsburg & Ginsburg, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

SIMMONS, C. J.

A school district treasurer deposited funds of the district in a state bank operated by the Guaranty Fund Commission; the bank honored all withdrawals during the first term, and a balance remained on hand payable to the treasurer at the end of his first term. At that time the bank was probably insolvent, but had sufficient cash reserves to pay the treasurer's deposit had it been demanded. The treasurer succeeded himself in office, furnished the required bond, with different sureties, entered upon the duties of his office for the second term, did not require the payment to himself of the moneys on deposit, treated the deposit as money at the beginning of and during his second term, added deposits thereto, issued checks against the same, and generally exercised dominion and control over the deposit. The bank during the period of the second term was adjudged insolvent and was closed, and money was lost to the treasurer and the district. The question is presented: Are the treasurer and his surety for the second term liable for the loss? The conclusion is that they are liable.

This action was before this court in *Thurston County v.*

*Chmelka,* 135 Neb. 342, 281 N. W. 628. The issues remain the same. Upon the second trial evidence was presented which materially changes the factual situation. The issues material here are that Chmelka, as treasurer of the school district, succeeded himself in that office in July, 1927, and that on July 16, 1927, he, with the defendant Jasa as one of his sureties, delivered his bond, which was duly approved. The bond was filed July 27, 1927, with the county clerk. The condition of the bond is that Chmelka "shall faithfully discharge the duties of his office * * * and shall well and truly pay over to the person or persons entitled thereto, upon the proper order therefor, all sums of money which shall come into his hands as treasurer of said district, and shall, at the expiration of his term of office, pay over to his successor in office all moneys remaining in his hands as treasurer." Plaintiff alleges that during said term Chmelka "deposited or permitted to remain on deposit in the Liberty State Bank of Thurston, Nebraska," certain of the funds of the district; that on March 10, 1928, the bank was adjudged insolvent; that at that time Chmelka had on deposit in said bank funds of the district in the sum of $1,500; that the said amount could not be withdrawn or obtained; that Chmelka is in default "as to the funds with which he was chargeable," and liable therefor. Defendants admit the official status of Chmelka, the execution and delivery of the bond, and deny generally other allegations. The cause was tried to the court, a jury being waived. At the conclusion of the trial, the court made findings of fact and law and dismissed the action.

Plaintiff contends that the defense offered is one of confession and avoidance and is not available under the general denial. We pass that contention and decide the principle question involved: Are the defendants Chmelka and Jasa, his surety, liable on the bond here in suit for the loss to the district? That the district lost its funds is not denied.

There is little dispute as to the material facts. The dispute arises as to the conclusions to be drawn from the evi-

dence and as to the liability of the defendants. The Liberty State Bank (hereinafter called the bank) was taken over by the Guaranty Fund Commission of the state on September 30, 1925, and thereafter operated by the commission as a "going concern." The expectation was "that the guaranty fund would eventually pay off the depositors." For cases dealing with this general situation, see *Svoboda v. Snyder State Bank,* 117 Neb. 431, 220 N. W. 566, and *Morrill County v. Bliss,* 125 Neb. 97, 249 N. W. 98. The situation did not develop as was hoped. Beginning some time during June or July, 1927, the commission, *as to all banks* under its control, required that withdrawals of deposits be regulated "in accordance with their reserve," and, where necessary, individuals be favored over public bodies in withdrawals. The bank involved here continued to take deposits until August, 1927. Just when it stopped withdrawals generally is not clear. It was adjudged insolvent, and a receiver placed in charge March 10, 1928.

The defendant Chmelka was elected treasurer of the school district in July, 1926. He furnished the required bond and entered upon his duties. He deposited the funds of the district in the bank, and all checks thereon during his first term were honored and paid by the bank without question. During the month of June, 1927, fourteen checks, totaling $429.95, were drawn against the account and paid by the bank. During the months of January to April, 1927, the district borrowed from the bank the sum of $3,200, and on June 7, 1927, the district paid the bank the sum of $3,255.70. At the end of the defendant's first term, $1,588.09 remained on deposit in the bank. The first term ended about the middle of July, 1927 (exact date not shown). The bond in question was entered into and delivered July 16, 1927. By stipulation it is agreed that exhibit "A" is one of the records kept by Chmelka "during his term of office commencing July, 1927." This exhibit shows an entry dated July 16, 1927. It may, therefore, be determined that Chmelka's second term of office began on or before the 16th day of July, 1927. His treasurer's record (exhibit "A")

shows that on July 16, 1927, he received from the bank "balance from last year $1,588.09." Actually on that date he did not receive any transfer of funds, and did not take any specific action as to this deposit. He testified that that amount was "chargeable" to him when he entered upon his second term, as a "balance on hand;" that he "just left it in the bank;" that it was in the bank at the beginning of his second term. The officials of the district did not examine his records because they "knew what he had" and that "the money was in the bank." Also, on July 16, 1927, Chmelka deposited a county warrant for $24 in the bank which was credited to this fund. In August, 1927, Chmelka attempted to make a deposit of $700 in the bank, and the bank refused the deposit. An additional deposit of 11 cents was made October 21, 1927 (which will be explained later).

Also, on July 16, 1927, Chmelka issued a check on the bank for school supplies in the sum of $12.20. This check was paid by the bank. October 13, 1927, Chmelka issued a check against the bank for a debt of the district in the sum of $100. This the bank refused to pay in money, but did issue to the payee a certificate of deposit therefor and charged the same to the account of Chmelka as treasurer, leaving a balance of $1,499.89. So far as the record discloses, this was the first refusal of the bank to pay in money checks drawn against this deposit. However, as defendants state in their brief, "So far as the account of the school district was concerned, the bank honored its check."

October 21, 1927, Chmelka asked the agent in charge of the bank "if there was a possibility of withdrawing this money." Withdrawal was refused because the agent "didn't have any funds to pay with." No previous effort to withdraw the money is shown. Chmelka then at the suggestion of the agent drew a check signed "James Chmelka, Treas." payable to "Time Certificate" for the balance of $1,499.89, which Chmelka had in the account at that time and gave it to the agent together with 11 cents in cash (of his own money), and the agent issued to "James Chmelka Treas. of School Dist. No. 6" an interest-bearing certificate of de-

posit for $1,500. Chmelka testified that these three checks were drawn during his second term, and "They were paid, the last one by the C. D." This certificate was subsequently turned over to Chmelka's successor. Chmelka was asked to examine his records, and to tell "how much money" he had on hand at the end of his second term. He answered $3,-811.79, and that that included the $1,500 which was on de-. posit in the bank. Chmelka as treasurer on April 5, 1928, filed a claim in the receivership action for $1,500 due to "James Chmelka, Treas." on the certificate of deposit. Two dividends in the sum of $195.18 were subsequently paid to the school district thereon.. The cash reserve of the bank on July 16 is not shown. As of July 27, 1927, the cash reserve was $5,493.35. At that time the balance in Chmelka's account as treasurer was $1,599.89. The cash reserve of the bank on October 25 (probably the same on October 21) was $652.87.

The defendant Chmelka was an insurer of the funds that came into his hands. When he was reelected to, and assumed the duties of, his office for the second term, he changed his official personality and became another officer. *Thurston County v. Chmelka, supra.*

He was bound by statute (Comp. St. 1929, secs. 79-404 and 79-406) and his bond to "faithfully discharge" the duties of his office and to pay over to his successor the money remaining in his hands as treasurer which had not been otherwise legally disbursed. See *Thurston County v. Chmelka, supra.*

Did Chmelka, as a matter of law, pay to himself as treasurer for the second term the money remaining in his. hands as treasurer at the end of the first term? The trial court found that he did not. In this the court erred.

When an officer, charged with the custody of public funds, serves successive terms, the sureties upon the bond for the second term become *prima facie* responsible for such balance of the previous account as is chargeable to their principal, the presumption being that the officer has received in his new official capacity that which it was his duty to

pay in his old, and that he has on hand all the funds with which he is chargeable. The burden of proving the contrary is upon the sureties on the second bond. 46 C. J. 1073-1082; *District Township of Fox v. McCord*, 54 Ia. 346, 6 N. W. 536 (citing *Bruce v. United States*, 17 How. (U. S.) 437; *Kelly v. State*, 25 Ohio St. 567; *Kagay v. Trustees of Schools*, 68 Ill. 75) ; Murfree, Official Bonds, 144; Throop, Public Officers, 233; *Snuggs v. Stone*, 7 Jones (N. Car.) 382; *Stoner v. Keith County*, 48 Neb. 279, 67 N. W. 311; *Clark v. Douglas*, 58 Neb. 571, 79 N. W. 158; *Paxton v. State*, 59 Neb. 460, 81 N. W. 383; *Board of Education v. Robinson*, 81 Minn. 305, 84 N. W. 105; *State v. Bobleter*, 83 Minn. 479, 86 N. W. 461.

To meet this burden, defendants contend that the bank was insolvent at the beginning of the second term, that it could not and would not have paid this deposit in money, had a demand for it been made, that Chmelka did not pay the amount due to himself as treasurer for the second time, that the money never came into his hands during his second term, that, therefore, the money was lost during the first term, and that the surety for the second term is not liable.

It is the duty of a treasurer to require that payments be made to him in money, or its equivalent evidenced by some medium that is immediately convertible into money. *State v. Hill*, 47 Neb. 456, 66 N. W. 541; *Bush v. Johnson County*, 48 Neb. 1, 66 N. W. 1023; *Paxton v. State, supra*. However, the fact that he does not require payments to be so made does not *ipso facto* relieve him or his surety from liability.

A transfer of the funds from a treasurer to himself has been made where a treasurer of public funds succeeds himself in office, furnishes the required bond with new sureties, has funds of his office on deposit in a bank, which, although insolvent, continues to do business, receiving deposits and honoring withdrawals, and the treasurer deals with such deposit as funds of his office for the second term, and the bank recognizes his continued authority and control over such funds. If a loss results, the treasurer and his surety for the second term are liable, unless it be shown that the

loss was complete during the first term. To avoid this liability, it is necessary to show that the *particular deposit* could not and would not have been paid in money upon demand by the treasurer at the beginning of his second term. It is not sufficient for the surety on the bond for the second term to show that the bank was insolvent at the beginning of the second term and that its liabilities were in excess of its assets. *Village of Hampton v. Gausman,* 136 Neb. 550, 286 N. W. 757; *Oeltjen v. People,* 160 Ill. 409, 43 N. E. 610; *Independent School District v. Hackman,* 178 Minn. 199, 226 N. W. 514; *Board of Education v. Robinson, supra;* *Yawger v. American Surety Co.,* 212 N. Y. 292, 106 N. E. 64; *Board of Commissioners v. Massachusetts Bonding & Ins. Co.,* 175 Ga. 584, 165 S. E. 828. The factual situations in the cases just cited are essentially identical with the case at bar. In lieu of extending this opinion unduly, the reader is referred to them for the facts and reasoning of the courts.

The bank was probably insolvent on July 16 and subsequent thereto. The cash reserves as of July 16 are not shown, but as of July 27 the cash reserves were $5,493.35 and Chmelka's account was $1,599.89.

The amount due Chmelka could have been paid at that time, had demand for payment been made. We are mindful of the fact that the secretary of the Guaranty Fund Commission testified that, because of the position taken by the commission as to all banks of which it had charge, he "would say" that the deposit in question could not have been withdrawn after July 1, 1927. He, however, was testifying from memory, ten years after the event, and without particular knowledge of the conditions of this bank. Likewise, the agent in charge of the bank after July 27, 1927, testified that, because of depleted reserves and the rules of the commission, Chmelka could not have withdrawn the deposit after July 27, 1927 (11 days after the beginning of the term and the delivery of the bond). The testimony of these two guaranty fund officials, in the nature of conclusions made ten years after the event, must be considered in the

light of the facts that demand for payment was not made or payment refused until sometime after the bond in suit was in force, at which time there had been a material depletion in the cash reserves; that a withdrawal against this account was paid during the second term; and that the depletion of the bank's reserves in the period between July 27 and October 25 would indicate that the bank had, during that period, been honoring checks of others drawn against deposits with it.

The decision here need not rest upon the above reasoning alone. A treasurer is bound to pay over to his successor the money remaining in his hands at the conclusion of his term. The succeeding treasurer is bound to require that he be paid in money. In the instant case, Chmelka was bound both by statute and his bond to the "faithful discharge" of his duties. This is a guaranty not only of his personal honesty, but also a guaranty of his competency, skill, and diligence in the discharge of his duties. *Fiala v. Ainsworth,* 63 Neb. 1, 88 N. W. 135. "The rule for the interpretation of. bonds seems to be that, when a public officer gives a bond for the faithful discharge of his duties, the word 'faithful' is held to imply that he has assumed that measure of responsibility laid on him by law, had no bond been given; that the object of a bond so conditioned is to get sureties for the performance of the duties of the office according to law, *and that everything is unfaithfulness which the law does not excuse."* (Italics ours.) *National Surety Co. v. State,* 90 Ind. App. 524, 161 N. E. 832; *London & Lancashire Indemnity Co. v. Community Savings & Loan Ass'n,* 102 Ind. App. 665, 4 N. E. (2d) 688.

Except as relieved by statute, if a treasurer receives money or its equivalent, he and his surety are accountable therefor as insurers of such funds. If, in lieu of money, he accepts something else, he has failed to discharge faithfully the duties of his office and he and his surety are responsible for any resulting loss.

At the beginning of his second term Chmelka was not required to accept anything other than money for the bal-

ance due to him as successor treasurer. He was not required to accept this deposit as money. It was his duty to refuse to accept it if it was not money. He did not require that the balance due be paid in money. He accepted this deposit as money of the district, assumed jurisdiction over it, and acted with it as moneys of the district in his possession and control during his second term.

"The retention of the deposits in the bank, and the adoption of the entries upon his books, made during his second term, were, in law, official acts, performed during * * * and binding upon the sureties for that term." *State v. Bobleter, supra.*

True, this court said in *Village of Hampton v. Gausman, supra,* that "The transfer from his one hand to the other of a check book to a worthless bank account would not constitute a legal accounting." Here, as has been pointed out, the evidence does not support a finding that the account was worthless.

In the *Gausman* case, upon the facts there disclosed, it was held that the bank could not and would not have permitted a withdrawal of the funds at the close of the treasurer's term, and that accordingly the treasurer (the managing officer of the bank) could not have accounted to his successor or to the village for the funds. In the case at bar, a different conclusion is reached. However, that decision did not rest upon that conclusion alone. It rested upon the further proposition that Gausman, as managing officer of the bank, knew of its precarious condition and that it was a breach of duty for him to fail to communicate the facts to the village, and if the funds could have been withdrawn on or before the expiration of his term it was a breach of duty for him to fail to make the withdrawal.

We are mindful of the fact that Chmelka occasionally worked in the bank both before and after July 27, 1927, as assistant on the "book work," from which it is argued that he must have known the condition of the bank beginning with his second term. However, he was not the managing officer of the bank as was Gausman. Neither does it appear

that he considered the deposit unsafe for he made an added deposit of $24 thereto during his second term and attempted to make a substantial deposit of funds therein in August, 1927.

The obligee of the bond for the second term is not denied a right of recovery for a breach of duty during that term merely because there might have been a different breach of duty by the treasurer during the first term, arising out of the handling of the funds in such a manner that the surety of that term might be liable. The findings of facts of the trial court not in accord with this decision are clearly wrong and are set aside. The conclusions of law of the trial court that there was no default on the part of defendant Chmelka, under the bond in suit, and that said bond has not been breached, and that defendants Chmelka and Jasa are not indebted to the school district are erroneous.

It necessarily follows that the defendants Chmelka and his surety, Jasa, are liable to the district for the loss it has incurred.

REVERSED AND REMANDED.

PAINE, J., dissents.